**NATIONAL LEAD COMPANY,**
Appellant,
v.

**WESTERN LEAD PRODUCTS COMPANY, Appellee.**
**WESTERN LEAD PRODUCTS COMPANY, Appellant,**
v.
**NATIONAL LEAD COMPANY,**
Appellee.

No. 16959.

United States Court of Appeals Ninth Circuit.

June 15, 1961.

Lyon & Lyon by R. Douglas Lyon, Los Angeles, Cal. (W. Philip Churchill, Harry R. Pugh, Jr., and Fish, Richardson & Neave, New York City, of counsel), for appellant.

Ford Harris, Jr., and Harris, Kiech, Russell & Kern, Los Angeles, Cal., for appellee.

Before CHAMBERS, HAMLIN and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Since cross-appeals are involved, we will in this opinion refer to the parties by their designations in the district court.

The plaintiff, National Lead Company, owner of ·Mayer patent No. 2,235,487, instituted this action against defendant, Western Lead Products Company, charging infringement of its patent and seeking damages [to be trebled because of the alleged wilful character of the infringement], as well as injunctive relief. Defendant filed its answer denying infringement, and alleging the Mayer patent to be invalid for lack of invention and on other grounds, and alleging that any recovery by plaintiff was barred by laches.

The district court had jurisdiction of the action under Title 35 U.S.C.A. § 281 and Title 28 U.S.C.A. §§ 1338(a) and 1400(b). Jurisdiction of this Court is based upon Title 28 U.S.C.A. §§ 1291 and 1294.

Following trial, the district court found that claims 1 and 2 of the Mayer patent were lacking in invention, that claim 2 had been infringed by the defendant, and that plaintiff was not guilty of laches. Judgment was entered accordingly. Plaintiff appeals from the judgment of the district court dismissing its complaint, and the defendant cross-appeals from that part of the judgment holding that claim 2 of the Mayer patent had been infringed, and holding that plaintiff was not guilty of laches.

The Mayer patent was issued March 18, 1941 on an application filed February 10, 1937, and expired March 18, 1958. Although the district court found that both claims one and two of the patent were invalid, we do not consider that the validity of claim one is involved in this appeal since plaintiff does not argue the validity of claim one because of mootness. Further, we do not consider that the issue of laches is involved in this appeal since the defendant in its statement of points to be relied upon on its cross-appeal, as required by Rule 17(6) of this Court, 28 U.S.C.A. states only that "The District Court erred in Finding of Fact 9, in holding that claim 2 of Letters Patent No. 2,235,-487 in suit, if valid, has been infringed by the defendant."

In view of the disposition which we intend to make of the appeal and cross-appeal, we deem it unnecessary to describe the patent or claim two thereof in detail. The patent describes and claims a process for converting molten lead into a finely-divided mixture that is suitable for making the lead plates of lead storage batteries. The basic apparatus for such process is known as a Barton Pot. The Barton Pot is old in the art, and consists of a cast iron pot or kettle designed to hold a quantity of molten lead. The molten lead is introduced into the pot and vigorously agitated by being driven against a fixed radial baffle by a rotating stirrer or paddle. While the lead is being thus agitated, air and steam jets infuse air into the upper part of the pot. This air oxidizes the lead, carries off the mix-

ture to a settling chamber, and cools the pot, which tends to become increasingly hot even without external heat, due to the exothermic character of the chemical reaction taking place.

The Mayer patent states that it achieves a solution to two previously unsolved problems, the problem of achieving a uniform mixture from the Barton Pot, and the problem of preventing the temperature from varying greatly as the reaction progresses. The patent teaches that these problems are related, in that if the reaction can be controlled by maintaining a constant temperature, a uniform product will result. The patent description includes a table showing different temperatures which produce mixtures of different composition, and the patent states that a uniform mixture of any desired type can be achieved by holding the temperature to a variation not exceeding 100° F. As a device for maintaining a constant temperature, the patent describes a device designed to regulate the rate of feeding of the molten lead into the Barton Pot, decreasing it as the temperature rises, increasing is as the temperature decreases, without varying the air flow to any great extent (since the air flow also controls oxidation and carries off the mixture, it is not susceptible to any great variation). The apparatus described in the patent describes a second pot serving as a reservoir in which molten lead is heated initially and a feeding duct from the reservoir pot into the Barton Pot, entering below the level of the molten lead in the Barton Pot. The feeding duct is controlled by a valve which can be operated so as to increase or decrease the feed as changes inside the Barton Pot are noted on a pyrometer.

Plaintiff emphasizes that the inventive character of the Mayer patent lies in the fact that Mayer first recognized the importance of temperature control, as well as in Mayer's use of a varying rate of feed in order to achieve temperature control. Plaintiff claims that as a result of the use of the patented device, temperatures within a Barton Pot do not fluctu-

ate more than 50° above or below a desired operating temperature.

Claim 2 defines a continuous process of obtaining a three component lead-lead oxide product, defines the basic nature of the Barton Pot process, and states how this process is controlled to make it continuous and to produce a product of uniform color and composition.

In support of its defense of invalidity of the Mayer patent for lack of invention defendant relies on (1) plaintiff's own lead oxide process used by it prior to the asserted invention of the Mayer patent and referred to as the "Bradley Plant" process; (2) five prior art patents; and (3) the prior knowledge and use by Metals Refining Company, a stranger to the action, of the Mayer process over a long period of time prior to the alleged invention of the Mayer patent. In addition, defendant asserted that the Mayer patent was invalid because its claims are fatally indefinite.

The trial of the action was to the court sitting without a jury. The testimony of a number of witnesses was offered and received for and on behalf of each party. In addition, the testimony of three witnesses by way of depositions was offered and received, as well as a number of exhibits. Following the submission of the cause, the district court in its findings of fact, after designating the parties and noting its jurisdiction, found as follows:

"6. Claims 1 and 2 of said Letters Patent No. 2,235,487 in suit each relate to a process for making a composition of lead oxide and finely divided metallic lead.

"7. Claims 1 and 2 of said Letters Patent No. 2,235,487 in suit each defines an assemblage of process steps, all of which were old in the prior art in which they operated in substantially the same way to produce substantially the same result, and the subject matter of each as a whole at the time the alleged inven-

tion was made would have been obvious to and could have been produced by any person having ordinary skill in the art to which said subject matter pertains.

"8. Claims 1 and 2 of said Letters Patent No. 2,235,487 is each wanting in invention.

"9. Claim 2 of said Letters Patent No. 2,235,487, if valid, has been infringed by the defendant, Western Lead Products Company, prior to expiration of said Letters Patent on March 18, 1958 and within six (6) years prior to the filing of the complaint herein; but no evidence that defendant has infringed claim 1 of said Letters Patent was offered at the trial.

"10. The plaintiff, National Lead Company, was not guilty of laches as to defendant prior to the filing of this action."

And as conclusions of law the district court concluded:

"1. The Court has jurisdiction of the parties and over the subject matter set forth in plaintiff's complaint and the defenses raised by defendant's answer.

"2. Claims 1 and 2 of said Letters Patent No. 2,235,487 in suit are, and each of them is, invalid and void in law for lack of invention.

"3. The defendant, Western Lead Products Company, is entitled to judgment against the plaintiff, National Lead Company, dismissing the complaint with prejudice and with taxable costs to defendant, and adjudging claims 1 and 2 of said Letters Patent No. 2,235,487 in suit invalid and void."

■ It is to be noted that findings of fact numbers 7 and 8 are little more than a paraphrase of Title 35 U.S.C.A. § 103,[1] and a legal conclusion of want of

1. Title 35 U.S.C.A. "§ 103. Conditions for patentability; non-obvious subject matter

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of

invention. Such findings should better be denominated conclusions of law. Great Atlantic & Pacific Tea Co. v. Supermarket Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

■■ While invention is a question of law, the questions of validity often turn on questions of fact. See National Sponge Co. v. Rubber Corp. of America, 9 Cir., 1961, 286 F.2d 731. "What the prior art was and what the patentee did to improve upon it are questions of fact. Whether what the patentee did is properly to be classified as an invention is a question of law." Cee-Bee Chemical Co. v. Delco Chemicals, 9 Cir., 1958, 263 F.2d 150, at page 153. See also Welsh Co. of California v. Strolee of California, Inc., 9 Cir., 1961, 290 F.2d 509; Rohr Aircraft Corp. v. Rubber Teck Inc., 9 Cir., 1959, 266 F.2d 613; Bergman v. Aluminum Lock & Shingle Corp., 9 Cir., 1957, 251 F.2d 801.

On this appeal the parties assert contrary positions with regard to the prior art and plaintiff's improvements thereon, which positions are claimed to be supported by the evidence. The evidence bearing on the three categories of prior art above mentioned are separate and distinct. The evidence adduced before the district court bearing on them is different, and different witnesses gave testimony in relation thereto.

We are not aided by any findings of the district court as to what the prior art was and what plaintiff did to improve upon it.

What we have said as to the inadequacy of findings of fact on the issue of validity is equally applicable to the issue of infringement.

■ It is the duty of the district court to find the facts. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. "The findings should be so explicit as to

give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." See Welsh Co. of California v. Strolee of California, supra.

■ It is not the proper function of this Court to engage in a process of assuming basic findings of fact upon which the conclusions of the district court may have been reached, and then testing these assumed fact findings under the "clearly erroneous" provisions of Rule 52(a).

■ The judgment of the district court is vacated and set aside, and the cause is remanded to the district court for the making of appropriate findings of fact and conclusions of law, and the entry of a judgment based thereon, and for such other proceedings as the district court may deem proper.

this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made. July 19, 1952, c. 950, § 1, 66 Stat. 798."