Edwin A. KAAKINEN, and Kaakinen Fish Company, Appellants,

v.

The PEELERS COMPANY, a Partnership, Appellee.

No. 16936.

United States Court of Appeals Ninth Circuit.

Jan. 22, 1962.

Rehearing Denied April 10, 1962.

WOLLENBERG, District Judge.

The District Court for the Western District of Washington, Southern Division, had jurisdiction over these patent claims under the patent laws of the United States (35 U.S.C. § 281). Jurisdiction of the District Court is founded on 28 U.S.C. § 1338(a).

The controversy concerns a machine or picker designed to peel raw shrimp, i. e., to divest edible meat of the head, shell, tail and other appendages. This peeling of the raw shrimp is a necessary step in the operation of a cannery where the ultimate aim is placing the shrimp meat, after blanching, in cans.

The canning of shrimp is an old industry dating from 1878, and until 1949 the picking of shrimp was all done by hand. The first successful machine came into use in the year 1949. Prior to that, from 1944, attempts to pick shrimp by machine had not been successful in eliminating hand picking. In 1949 appellee's predecessor offered to the industry a machine embodying the inventions covered by the claims of patents in suit. Since that year these machines have virtually eliminated all hand peeling of shrimp in the canning industry.

Appellants herein were users of the appellee's machines, and while so using these machines installed two of the accused machines [1] and used them for varying periods, not substantial in time.

In the District Court the plaintiff-appellee charged infringement as to certain patents [2] and the defendants-appellants counterclaimed for a declaratory judgment declaring the patents involved to be invalid and not infringed. The District Court found the patents to be valid and

---

Robert W. Beach, Seattle, Wash., John E. Close, Aberdeen, Wash., for appellant.

Ford E. Smith, Seattle, Wash., W. D. Keith, Keith, Bolger, Isner & Byrne, New York, A. Robert Theibault, Wilkinson, Mawhinney & Theibault, Washington, D. C., for appellee.

Before CHAMBERS and HAMLEY, Circuit Judges, and WOLLENBERG, District Judge.

---

1. These two machines were designated throughout the trial as "Skrmetta Machines." The trial court's Findings Numbers 41 and 42 clearly set out the similarities and differences in the appellants' and appellee's machines, and in Finding 42(a) the trial court found the following:

   "(a) The plaintiff's machine and the accused machine operate in the same manner in the peeling of shrimp."

This finding is sustained by the evidence.

2. The patents in suit are designated as follows:

   (1) Number 2,429,828, designated as '828 hereafter;

   (2) Number 2,574,044, designated as '044 hereafter;

   (3) Number 2,537,355, designated as '355 hereafter.

to have been infringed by the defendants, dismissed the declaratory judgment counterclaim with prejudice, and ruled that defendants were entitled to an accounting for damages.[3]

Jurisdiction is well founded upon appeal.[4]

■ In respect to the validity of the invention over prior art the trial court found a new combination of old elements.[5] The controlling principles which guided our review on this point have been succinctly stated in Webster Loom Co. v. Higgins,[6] as follows:

"It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention."

This Circuit, in Pursche v. Atlas Scraper and Engineering Co., 300 F.2d 467,[7] quoting from Professor Robinson in his work on Patents, approves and expounds upon the principle stated, supra:

"Where operations or instruments are thus united, one of two results must follow. Either each element remains unchanged in function and effect; or by the action of the elements upon each other, or their joint action on their common object, they perform additional functions and accomplish additional effects. The former union is a mere collocation or aggregation of the elements. Although they have been brought together in an apparent organism and rendered more available for use, they still remain the same distinct and independent means, still acting as so many separate units and not co-operating with each other to perform additional functions and accomplish additional results. Such

unions, therefore, are not the creation of new means. They do not involve an exercise of the inventive faculties, nor can they be protected by a patent.

\*   \*   \*   \*   \*   \*

"But when these elements are so united that by their reciprocal influence upon each other, or their joint action on their common object, they perform additional functions and accomplish additional results, the union is a true combination. While every element remains a unit, retaining its own individuality and identity as a complete and operative means, their combination embodies an entirely new idea of means, and thus becomes another unit, whose essential attributes depend on the co-operative union of the elements of which it is composed. Such a combination is a different invention from the elements themselves, whether considered in their separate or their aggregated state, the method of their co-operation in the combination being the result of the inventive act. Whether the elements are new or old, and whether they co-act successfully or simultaneously is of no importance. To unite them in a new means by the exercise of inventive skill is invention, and renders the combination, as an entirety, the subject-matter of a patent. \*   \*   \*"[8]

Machines embodying the combination of appellee's machines revolutized the shrimp canneries, bringing new results in yields and upgrading of the shrimp with a consequent rise in its market value. An increased market for shrimp resulted in benefit to the fishermen and a reduction in the labor costs of canning the shrimp were other healthful effects

3. Record, p. 263.

4. See: 28 U.S.C.A. § 1292(a) (4) (1954).

5. Findings of Fact, 21, 24, 26, 49.

6. 105 U.S. 580, 591 (1881).

7. Numbers 16410, 16411, December 12, 1961.

8. See also: The Coleman Company v. Holly Manufacturing Co., 233 F.2d 71, 80 (9th Cir., 1956).

upon the industry. There had been, previous to appellee's combination, no combination effected which would successfully peel shrimp.

The trial court, in its holding of validity of the claims over prior art, correctly analyzed the existing patents presented as a "prior art" defense. The evidence presented supports the findings of the court in this regard.

■ Where, as here, the inventions were new combinations, the words of the Traitel Marble Company v. U. T. Hungerford Brass & Copper Co. case are most apt:

> "Assuming, for argument, that the law is absolute that there can be no patent for the new use of an old thing, that is because the statute allows no monopolies merely for ideas or discoveries. If the thing itself be new, very slight structural changes may be enough to support a patent, when they presuppose a use not discoverable without inventive imagination. We are to judge such devices, not by the mere innovation in their form or material, but by the purpose which dictated them and discovered their function. Certainly the art would have waited indefinitely, in the light of all that McKnight disclosed for Calkin's contribution to its advance. It will not serve now to observe how easy it was, given the suggestion, to change his invention into that of the patent in suit." [9]

■ Appellants rely upon many references to sustain a "prior art" defense. Corn-huskers, rock and gravel strainers, peanut stemmers, and onion skinners are some of the other machines referenced by appellants.[10] None of the evidence adduced, however, overcomes the point that where the method or device satisfies an old or recognized want, as it does here, invention will be inferred rather than the exercise of mechanical skill. "Mere skill of the art would normally have been called into action by the generally known want." [11]

■ Further, the evidence shows that the success of the machines here was substantial and immediate. While this alone is not of significance, coupled with the lack of prior discovery it may be, and was, accepted as evidence that the matter was not obvious.[12] The evidence, therefore, clearly demonstrated the validity of the patents in suit and was summed up in the trial court's Finding of Fact No. 26: "The inventions of the patents in suit are primary and pioneer inventions in the art of shrimp processing."

Appellants specify as error that the findings of the District Court as to infringement are not supported by the evidence or law.[13] A review of the evidence on this point, which includes a test in the plant of the machines, and the testimony of an expert witness, Strasburger, led the District Court to make findings of fact as to infringement, and there is no error of law in this regard.[14]

The court has reviewed the remainder of appellants' 27 specifications of error and finds nothing therein which would alter the disposition of the case here.

On Appellants' Petition for a Rehearing

Appellants have petitioned this Court for a rehearing en banc [1] alleging that

9. Judge Learned Hand, 18 F.2d 66, 68 (2nd Cir., 1927).

10. See Appellants' Opening Brief, Appendix I, pages 1A to 6A.

11. Paramount Publix Corporation v. American Tri-Ergon Corporation, 294 U.S. 464, 474, 55 S.Ct. 449. 454, 79 L.Ed. 997 (1935).

12. Moist Cold Refrigerator Co. v. Lou Johnson Co. et al., 249 F.2d 246 (9th Cir., 1957).

13. Specification of Error Nos. 14, 15, 16, 17, 18. Appellants' Opening Brief, p. 22.

14. Findings of Fact Nos. 39, 41 and 42.

1. See Rule 23(5) of the Rules of the United States Court of Appeals for the Ninth Circuit, 28 U.S.C.A.

the findings of fact of the District Court approved in this case do not meet the standards explicated by other panels in cases in this Circuit.

In support of this position appellants cite, among other cases, National Lead Company v. Western Lead Products Company[2] and Welsh Company of California v. Strolee of California, Inc.[3]

These cases present a minimum standard for findings from the District Court. As a comparison to the case herein, it is not necessary to reproduce the findings of the District Court, for in no way can they be said to fall within the ambit of the cases cited by the appellants.[4] The findings are detailed and complete in respect to prior art, time of invention, existence of competing machines, the nature of competing machines and comparison of functions; in short, novelty, utility, and invention. The findings cannot be classed as "mere conclusions"[5] or "sundry contradictory assumptions".[6] If anything, the findings of fact of the District Court could be characterized not as conclusory but rather as complete and detailed.[7]

We are further urged that the standards of Webster Loom Company v. Higgins, cited in our opinion, are not applied to the facts of this case. We disagree. As we said, "The District Court found a new combination of old elements."[8] These findings are referenced in footnote 5 of the Court's opinion.

Appellants further contend that the matter ought to be remanded for a comparison of each of the patents. Findings 41, 42, and 42(a) and comparison are noted in our opinion at footnotes 1 and 2. We find no error therein.

Appellants' petition for rehearing denied.

2. 291 F.2d 447 (9th Cir. 1961).

3. 290 F.2d 509 (9th Cir. 1961).

4. In National Lead five findings of fact were noted by the Court of Appeals: Numbers 6, 7, 8, 9 and 10. The Court said: "It is to be noted that findings of fact numbers 7 and 8 are a little more than a paraphrase of Title 35 U.S.C.A. § 103, and a legal conclusion of want of invention. Such findings should better be denominated conclusions of law." 291 F. 2d at 451. Findings of fact numbers 6, 9 and 10 were, in our opinion, conclusions of law.

The Court in Welsh Company determined that the findings as to the Preisler Patent were "too broad and conclusory. They do not reveal the 'basic facts on which the District Court relied.'" 290 F. 2d at 510. In respect to the Smith patent, the District Court "once again failed to reveal the reasons impelling such a conclusion." 290 F.2d at 513.

5. Hycon Manufacturing Company v. H. Koch & Sons, 219 F.2d 353 (9th Cir. 1955).

6. Welsh Company of California v. Strolee of California, supra.

7. Appellant cites, in his petition, as appropriate to his contentions, language from Dalehite v. United States, 346 U.S. 15, 24, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) indicating that conclusory statements should be eschewed. With this we would agree. The language cited by appellant appears in footnote 8 of the opinion of the Supreme Court. However, in Dalehite the finding eliciting the statement from the Supreme Court was one which merely said that there had been negligence. As to these findings the Supreme Court said: "To the extent that they are of law, of course they are not binding on appeal." 346 U.S. at 24 n. 8, 73 S.Ct. at 962. The findings in the Dalehite case were actually characterized by the Court of Appeals as "profuse, prolific, and sweeping." In re Texas City Disaster Litigation, 197 F.2d 771 (5th Cir. 1952). The Supreme Court said of this characterization "We agree." 346 U.S. at 24 n. 8, 73 S.Ct. 956.

8. 301 F.2d 172.