**Marvin K. SWOFFORD and Marion F. Wright, individuals,**
**and**
**Pathfinder Oil Tool Co., a corporation,**
**Plaintiffs,**
**v.**
**B & W, INC., Defendant.**
**Civ. A. No. 13564.**

United States District Court
S. D. Texas,
Houston Division.
March 8, 1966.

Hayden & Pravel, Jack W. Hayden, Houston, Tex., for plaintiffs.

Lyon & Lyon, R. Douglas Lyon, Los Angeles, Cal., and Arnold & Roylance, Tom Arnold, Houston, Tex., for defendant.

NOEL, District Judge.

Plaintiffs, Marvin K. Swofford, Marion F. Wright, and Pathfinder Oil Tool Co., filed this action against defendant, B & W, Inc., and seek to recover damages for the infringement of Letters Patent No. 2,826,253 and pray for an injunction against further infringement by said defendant.

Defendant alleges that the patent in suit is void and not infringed, and in any event, unenforceable, as plaintiffs come into Court with unclean hands due to their prior misuse of the patent.

Plaintiff Marvin K. Swofford is a resident of Houston, Texas, and plaintiff Marion F. Wright is a resident of Kingsland, Texas. Plaintiff Pathfinder Oil Tool Co. is a Texas corporation with a place of business in Houston, Texas. Defendant B & W, Inc. is a California cor-

poration with a place of business in Houston, Texas. United States Letters Patent No. 2,826,253 were issued to Marion F. Wright and Marvin K. Swofford on March 11, 1958, and Pathfinder Oil Tool Co. is the owner thereof with the right to maintain this action for patent infringement under 35 U.S.C.A. § 281. The jurisdiction of this Court is founded upon 28 U.S.C.A. §§ 1338 and 1400.

By its Memorandum and Order of October 4, 1963, this Court granted plaintiffs' demand for jury trial, at least as to those questions of fact germane to the request for damages: the issues of validity of the patent, infringement thereof, and appropriate damages. See Swofford v. B & W, Inc., D.C., 34 F.R.D. 15. Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, separate trials of the issues of liability and damages were ordered so as to present counsel the opportunity to first obtain final settlement of the liability issue on appeal before reaching the damages question.

The jury trial on the issues of validity and infringement commenced on March 15, 1965, and the jury returned its verdict on March 25, 1965, finding the patent to be both valid and infringed. The case is now before the Court upon defendant's motion for directed verdict under Rule 50(a), Federal Rules of Civil Procedure; plaintiffs' motion for judgment in accordance with the verdict; and for determination of the equitable defense of unclean hands.

*Validity:*

Jury answers to interrogatories pertaining to the question of the validity of United States Letters Patent No. 2,826,-253 are as follows:

Interrogatory No. 1:
Do you find that defendant has proved by clear and convincing evidence that the combination of old elements defined by the respective claims of the plaintiffs' patent in suit does not produce any unusual or surprising consequence which would

not have been expected by a person having ordinary skill in the art and having knowledge of all the prior art as of June 4, 1954?

Answer, "We do" or "We do not," as to each claim as follows:

Claim 1   We do not

Claim 2   We do not

Claim 3   We do not

Claim 4   We do not

Claim 5   We do not

Claim 6   We do not

Claim 7   We do not

Interrogatory No. 2:
If you have answered Interrogatory No. 1 with respect to any claim, in the negative, then specify, describe or identify as to each such claim what new or unusual consequence, or consequences, you find so produced.

As to,

Claim 1   A well bore cleaner with fixed cable loops

Claim 2   means of securing to casing pipe

Claim 3   support member is hollow strip of metal

Claim 4   a predetermined pair of openings for fixed loops being secured to interior of said supporting member

Claim 5   adjacent loop members overlapping and contacting each other

Claim 6   means of securing inner portions against movement relative to support

Claim 7   individual securing means for each loop

Interrogatory No. 3:
Do you find that the defendant has proved by clear and convincing evidence that the patented structure does not produce a new and useful result?

Answer, "We do" or "We do not," as to each claim as follows:

Claim 1   We do not

Claim 2   We do not

Claim 3   We do not

Claim 4 __We do not__

Claim 5 __We do not__

Claim 6 __We do not__

Claim 7 __We do not__

Interrogatory No. 4:

If you have answered Interrogatory No. 3, with respect to any claim, in the negative, then describe as to each such claim the nature of the new and useful result you find was so produced:

As to:

Claim 1 __Less damage to tool on pipe rack__

Claim 2 __economy and ease of installation__

Claim 3 __Less damage to tool in well__

Claim 4 __clean bore in well more efficiently__

Claim 5 __Better durability__

Claim 6 __Give good rigidity and flexibility__

Claim 7 __Stronger uniform loops__

Interrogatory No. 5:

Do you find that the defendant has proved by clear and convincing evidence that the assembly of elements defined by any one of the claims of the plaintiff's patent in suit produces no result differing from that produced by Barcal (French) 540,910, which a person of ordinary skill in the art at the time of the claimed invention would not have expected to result from such an assembly?

Answer, "We do" or "We do not," as to each claim as follows:

Claim 1 __We do not__

Claim 2 __We do not__

Claim 3 __We do not__

**Claim 4 __We do not__**

Claim 5 __We do not__

Claim 6 __We do not__

Claim 7 __We do not__

Interrogatory No. 6:

If you have answered Interrogatory No. 5, with respect to any claim, in

the negative, then specify, describe or identify as to each such claim what differing result you find was so produced.

Claim 1 __Fixed cable loops__

Claim 2 __Means of securing to Casing Pipe__

Claim 3 __Support member is a hollow strip of metal__

Claim 4 __A predetermined pair of openings__

Claim 5 __adjacent loop members contacting each other and held in contact with said supporting member against longitudinal displacement__

Claim 6 __different means of securing inner portion against movement relative to support__

Claim 7 __individual securing means by clamps for each loop__

Interrogatory No. 7:

Do you find that the defendant has proved by clear and convincing evidence that the assembly of elements defined by any one of the claims of the plaintiffs' patent in suit produce no result differing from that produced by Wright patent 2,634,813, which a person of ordinary skill in the art at the time of the claimed invention would not have expected to result from such an assembly?

Answer, "We do" or "We do not," as to each claim as follows:

Claim 1 __We do not__

Claim 2 __We do not__

Claim 3 __We do not__

Claim 4 __We do not__

Claim 5 __We do not__

Claim 6 __We do not__

Claim 7 __We do not__

Interrogatory No. 8:

If you have answered Interrogatory No. 7, with respect to any claim, in the negative, then specify, describe or identify as to each such claim what result differing from the Wright patent 2,634,813 you find was so produced.

As to:

Claim 1   Fixed Cable Loops

Claim 2   described means of securing to Casing

Claim 3   Support member is a hollow strip of metal

Claim 4   A predetermined pair of openings

Claim 5   adjacent loop members contacting each other and held in contact with said supporting member against longitudinal displacement

Claim 6   different means of securing loops

Claim 7   Individual securing means of loop

**Interrogatory No. 17:**

Does the Barcal (French) 540,910 disclose a series of flexible loop-forming members mounted upon a hollow support member with the ends thereof clamped together?

Answer, "Yes" or "No."   No

**Interrogatory No. 21:**

Do you find that the combination defined in the claims of the plaintiff's patent in suit is a combination the structure of which was not obvious as of June 4, 1954 to a man of ordinary skill in the art who had knowledge of all of the prior devices and references?

Answer, "We do" or "We do not" as to each claim as follows:

Claim 1   We do

Claim 2   We do

Claim 3   We do

Claim 4   We do

Claim 5   We do

Claim 6   We do

Claim 7   We do

**Interrogatory No. 22:**

Do you find that the combination defined in the claims of the plaintiff's patent in suit is a combination the structure of which is anticipated, as that term is defined to you in the charge to the jury, by prior devices and references?

Answer, "We do" or "We do not," as to each claim as follows:

Claim 1   We do not

Claim 2   We do not

Claim 3   We do not

Claim 4   We do not

Claim 5   We do not

Claim 6   We do not

Claim 7   We do not

■■   The ultimate issue of whether a patent meets the requisite standard of invention is a question of law rather than one of fact. Fritz W. Glitsch & Sons, Inc. v. Wyatt Metal and Boiler Works, 224 F.2d 331 (5th Cir. 1955); Little Mule Corp. v. The Lug All Co., 254 F.2d 268 (5th Cir. 1958); Noe v. Smith et al., 300 F.2d 430 (5th Cir. 1962). However, while invention is a question of law, what the prior art was and what the patentee did to improve upon it are questions of fact. National Lead Co. v. Western Lead Products Co., 291 F.2d 447 (9th Cir. 1961); Rohr Aircraft Corp. v. Rubber Teck, Inc., 266 F.2d 613 (9th Cir. 1959). At this point the following language found in Spray-Bilt, Inc. et al. v. Ingersoll-Rand World Trade Ltd., 350 F.2d 99 (5th Cir. 1965), is very pertinent:

"Directing our attention, then, to the validity of the main Anderson patent (hereinafter referred to as Anderson '125) allegedly infringed, we are immediately faced with the 'rather severe test' promulgated by the Supreme Court to test patents made up of new combinations of old elements, Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152 [71 S.Ct. 127, 130, 95 L.Ed. 162] (1950), i. e., are there 'any unusual or surprising consequences from the unification of the elements here concerned? Granted, this test is not an end-all by any means, but it does indicate an approach for determining the validity of combination patents and amounts to a mandate from the Supreme Court 'to scru-

tinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements.'

"In light of this mandate, we must ascertain (1) the status of the prior art at the time of Anderson's claimed invention, (2) what Anderson did to improve upon prior art, and (3) whether what Anderson did is properly to be classified as invention."

Rule 49(a) of the Federal Rules of Civil Procedure allows the Court to make findings on issues raised by the pleadings but on which neither side has requested jury submission. It would therefore appear to be the first task of this Court to make additional fact determinations relating to (1) the status of the prior art at the time of Swofford and Wright's claimed invention, and (2) what Swofford and Wright did to improve upon it.

First, however, some general background information concerning oil well completion would seem appropriate, as the patent in suit defines a device for cleaning the walls of a well bore. The need for such a device arises when a well has been drilled to the desired depth and the casing is to be cemented in place. The casing is first lowered into the hole and positioned in place. Cement is then pumped down the casing which moves out and around the bottom thereof and then up the annulus between the casing and the open hole to bond the casing to the formation. As the cement moves around the bottom of the casing into the annulus between the casing and the bore, it must displace the drilling mud which has remained in the hole from the drilling operation in order to effect this bond. The drilling mud at this time can be in one of three physical states—first, the fluid state; second, a state of gel; and third, what is termed "filter cake" wherein the moisture has escaped into the formation, leaving the precipitated particles adhering to the well bore. In many instances the cement will not displace all of the drilling mud, particularly the gelled mud and filter cake, thereby resulting in an imperfect bond.

The patent in suit teaches a device with a series of projecting wire loops to be attached to the outside of the casing as the casing is lowered into the well bore. When adjacent to the zone to be cemented, the device is then rotated so that the wiping action of the wire loops dislodges the filter cake from the well bore.

I shall now proceed to examine the prior art as it existed on June 4, 1954, the day the application for the patent in suit was filed. While the concept of a tool to remove filter cake from a well bore by wiping or scratching was not new to the oil industry on this date,[1] I find what probably is the most pertinent structure in the prior art to be a device used to clean chimneys. This is the French patent to Barcal, No. 540,910. Barcal teaches a wiper formed from a series of loops made of coiled metal wire, overlapping one another, each of which loops has its ends clamped in place to a central ring support. (Defendant's Exhibits 2 and 3.)

A second of the more pertinent prior art structures is a paraffin scraper on which United States Patent No. 2,433,955 was issued to R. E. Meynig on January 6, 1948. This invention teaches a scraper which is adapted to be traversed throughout a well tubing to remove paraffin, asphalt or other accumulations. Meynig teaches an elongated body which may be solid or hollow and which is provided with a plurality of apertures to receive a continuous length of wire which is threaded sequentially through the several apertures to form loops which extend radially outwardly to remove the paraffin or other accumulation within the bore of the well tubing. (See Defendant's Exhibit 2.)

Two more patents, each issued to K. A. Wright, complete the résumé of what is considered by this Court to be the most

1. C. E. Reistle, Jr. et al. Patent No. 2,421,-434 issued June 3, 1947; K. A. Wright Patent No. 2,506,405 issued May 2, 1950; K. A. Wright Patent No. 2,634,813 issued April 14, 1953.

pertinent prior art. United States Letters Patent No. 2,634,813, issued April 14, 1953, teaches the combination of a hollow collar, well bore cleaning means, and means for clamping the cleaning means to the collar. United States Letters Patent No. 2,506,405, issued May 2, 1950, teaches a well bore wall cleaner featuring the use of an annular collar or sleeve to be attached to the outside of the casing. (See Defendant's Exhibit 2.)

Having noted the French patent to Barcal No. 540,910, the patent to Meynig No. 2,433,955, and the two patents to Wright No. 2,634,813 and No. 2,506,405 as being the more pertinent prior art, the next task of this Court is to determine what Swofford and Wright did to improve upon it. Their device was the first tool used to clean a well bore which utilized cable loops [2] with both ends fixed. (Statement of Facts, pages 704–5.) Prior to the introduction of the Pathfinder device, the task of removing filter cake from the part of the well bore to be cemented had been performed by tools with protruding metal fingers or bristles known in the oil industry as scratchers. Abundant testimony is found in the record concerning problems allegedly inherent in the use of these scratchers which, according to this testimony, were either resolved or lessened by the employment of cable loops to perform the function of cleaning the well bore. That the jury found this testimony convincing is evident from their response to Interrogatory No. 4. The jury has in effect found that the wiper, the tool employing fixed cable loops in contact with the formation, does a more efficient job than does the scratcher, the tool with outpointed fingers or tines as the cleaning means. That a difference of opinion still exists in the industry as to which is better is evident from the 1964–1965 catalog of defendant B & W, Inc. (Defendant's Exhibit 15), in which tools of both types are offered to the industry. In addition to their idea of using the

loops, Swofford and Wright devised a clamping means which would hold each loop independently of the other loops on the supporting member. At first, individual clamps were used, but it was then discovered that the same purpose could be accomplished by the frictional effect of an inner band, which band also strengthened the tool. (Statement of Facts, pages 210 et seq. and 269 et seq.)

The critical question now to be decided as a matter of law by this Court is whether what Swofford and Wright have done to improve upon the prior art as it existed on June 4, 1954 rises to the standard of invention as defined by statute and in the courts. The answers of the jury to Interrogatories Nos. 1, 3 and 21 will have no influence upon this determination, as they are in response to the ultimate question of validity, itself, which I have found to be one of law rather than of fact. As stated in National Lead Co. v. Western Lead Products Co., 291 F.2d 447 (9th Cir. 1961):

"It is to be noted that findings of fact numbers 7 and 8 are little more than a paraphrase of Title 35 U.S. C.A. § 103, and a legal conclusion of want of invention. Such findings should better be denominated conclusions of law. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162."

The jury findings in response to Interrogatories Nos. 5, 7, 17 and 22 bear on the technical defense of *anticipation*. This defense is defined and related to the ultimate question of invention in Allied Wheel Products v. Rude, 206 F.2d 752 (6th Cir. 1953), as follows:

"To anticipate an invention is to negative novelty; but even though a patent is not anticipated, and is concededly novel, it may lack invention. In order to anticipate an invention, it is necessary that all of the elements of the invention or their equivalents be found in one

---

2. Cables were employed in wiping devices prior to 1954 as tines or fingers, but

were fixed at only one end. (Statement of Facts, pages 683 and 703.)

single description or structure, where they do substantially the same work in substantially the same way. (Citation omitted.) However, if a new assemblage of old things amounts only to aggregation and not to combination, or if it results in no new mode of operation, the patent which covers it will be void for want of invention, though not void for want of novelty."

Thus, while the jury has found the plaintiffs' patent in suit not to have been anticipated by either the French patent to Barcal No. 540,910 or by the Wright Patent No. 2,634,813, as anticipation has been defined in Allied Wheel Products, this finding is not dispositive of the ultimate question of validity.

I can draw little assistance from the findings of the jury in response to Interrogatories Nos. 2, 6 and 8, as it would appear that the jury here has merely put a caption on, or "headnoted," each of the seven claims of the patent in suit.

Neither of the patentees of the Pathfinder tool had had any formal engineering training. (Statement of Facts, pages 220 and 319.) Both had acquired their familiarity with oil field completion methods through their employment with the Weatherford Oil Tool Company, Wright as an equipment salesman, and Swofford as a pilot. The concept of the patent in suit, according to the testimony of Marion F. Wright, had its genesis in a discussion between himself and Mr. Swofford concerning oil field problems and possible solutions thereto. Wright testified as follows (see Statement of Facts, pages 164, 165 and 166):

"My personal observation, having seen so many of these tools and seeing them damaged and encountering the problem of having to stop and circulate the mud column in order to relieve the pressures that were building up due to the restriction of the mud column * * *, I was trying to figure out why somebody had never thought of another way of doing it other than using a bristle-type tool. And he advised the same opinion. * * * We would devise a tool that would eliminate these, such as the scratcher bristles breaking off, the scratcher bristles being damaged from rolling over the rack into the wall and through the spider on the rotary table damaging them that way, and naturally one that would be less easy to destroy, but one which would give more freedom of motion for fluid past this tool, and also one that could contact more of the well bore."

■■ Broadly stated, they felt they had solved these problems by substituting a series of cable loops for the fingers or tines used on the scratchers. Referring again to the response of the jury to Interrogatory No. 4, it is evident that they agree. However, satisfaction of a long existing need is at most evidence which may help decide a close question of invention. Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973 (1945). Something more is needed. This evasive quality has been defined as "creative" or as revealing "genius"—see: Jungersen v. Ostby & Barton Co., 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235 (1949); Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941). Production of a new device by manipulation of known elements through application of ordinary mechanical skill does not constitute invention although it may have required study, effort and experimentation. Lyman Gun Sight Corp. v. Redfield Gun Sight Corp., 87 F.2d 26 (10th Cir.1936). Mr. Wiley Noble, placed on the stand on behalf of the defendant as an expert witness, testified that it would be apparent to anyone skilled in the art to apply the loops of the French patent to Barcal No. 540,910 to the collar of the Wright Patent No. 2,506,405.[3] (See Statement of Facts, pages 864 et seq.)

3. Q "Mr. Noble, if the use of individual loops for wiping a bore are known, and the use of a collar for supporting wiping elements is known, would one skilled

■ Summarizing, Barcal teaches the use of a series of loops as the cleaning means. Stiffer wire loops were used on the Meynig paraffin scraper. The patent to Wright, No. 2,634,813, discloses the combination of a hollow collar, well bore cleaning means and means for clamping the cleaning means to the collar. While the component parts of the patent in suit do not appear in their precise form in this prior art, I find that the prior art should suggest the changes which have been made to a mechanic skilled in the art. I find that what Swofford and Wright have done to improve upon this prior art does not rise to the standard of invention enunciated in Cuno Engineering Corp. v. Automatic Devices Corp., supra. Nor do the old component parts combined in the Pathfinder tool "perform any additional function in the combination than they perform out of it. * * * Two and two have been added together, and they still make only four." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra. I therefore find Patent No. 2,826,253 and each of Claims 1 through 7 thereof to be invalid and void for lack of invention.

Implicit in this holding is a finding that any presumption of validity attached to the issuance of this patent has been overcome by clear and convincing evidence to the contrary.

*Infringement:*

■ Patent Infringement is a question of fact. United States Industries, Inc. v. Otis Engineering Corp., 254 F.2d 198 (5th Cir. 1958); Fritz W. Glitsch & Sons, Inc. v. Wyatt Metal & Boiler Works, 224 F.2d 331 (5th Cir. 1955). Defendant's motion for directed verdict [4] in pertinent part reads as follows:

"They tried for broad claims in the patent office and were refused them. They were given some narrow claims, which do not literally read upon the structure that the defendant produces. I do not believe they can contend for sufficiently broad interpretation of their claims to incorporate our structure and, therefore, I believe that the case should be at this time dismissed."

■ The defendant urges to this Court that the doctrine of file wrapper estoppel *as a matter of law* precludes a finding of infringement. This doctrine, in the words of Judge Wisdom found in Edward Valves, Inc. v. Cameron Iron Works, Inc., 286 F.2d 933 (5th Cir. 1961), is:

"That doctrine [file wrapper estoppel] applies when a patentee, required to give up certain subject matter in order to obtain his patent, later attempts to construe the allowed claims to recapture that which he has surrendered. The doctrine prohibits the revival and restoration of an abandoned claim to the patent by reading it into the claims that are allowed."

The jury having found the accused structures and the patent claims of the Pathfinder tool to be *alike* [5] in material respect rather than equivalent, I find this doctrine to be inapplicable. See Up-Right Inc. v. Safway Products, Inc., 315 F.2d 23 (5th Cir. 1963).

in the art have any difficulty in affixing the loops to the collar?
A "A mechanic skilled in the art could mount the loops on the collar.
Q "By adding suitable clamping means?
A "Yes. There are many ways he could mount it.
Q "Based on your experience with Reed Roller Bit Company, you would expect anyone in your organization to solve that problem, would you not?
A "Yes, I believe one of my engineers, if he were called upon to place the loops of Barcal upon the collar of Wright,

that he could have devised a method of putting the two together.

* * * * * * *

Q "Would your opinion be any different if I had limited the time of the question as to sometime, say, before 1953?
A "Yes, I believe prior to 1953 any of my senior engineers at Reed Roller Bit could have adapted the individual loops of Barcal to the collar of Wright."

4. Statement of Facts, page 657.

5. Jury answers to Interrogatories 9, 10, 11, 12, 13, 14, 15 and 16.

I therefore find, in accord with the response of the jury to Interrogatory No. 23, that defendant B & W, Inc. infringes the plaintiffs' patent in suit and each of claims 1 through 7 thereof by the manufacture and sale of its devices identified as Plaintiffs' Exhibits 21, 27 and 28.

*Patent Misuse:*

Defendant asserts the patent in suit to be unenforceable due to plaintiffs' alleged misuse of same in connection with three agreements:

(1) Licensing agreement between plaintiffs and Weatherford Oil Tool Company, Inc.

(2) Licensing agreement between plaintiffs and Flexel Company, Inc.

(3) Sales agreement between plaintiff and Lloyd Jackson, doing business as Jackson Tool Company.

I shall consider each agreement separately.

### The Weatherford License

This license, identified as Plaintiffs' Exhibit 73, was granted to the Weatherford Oil Tool Company, Inc., hereinafter called Weatherford, in settlement of patent infringement litigation on the patent in suit. Pertinent to the question to be decided here are paragraphs 4 and 5 thereof, quoted below:

"4. DEFENDANT further agrees that up to and including March 11, 1975 it will not manufacture, use or sell or cause to be manufactured, used, or sold well bore abraders or wipers as exemplified by Exhibit 8 and 9 of the Jess E. Hall, Jr., deposition or Interrogatory Exhibits 1–15, inclusive, or their substantial equivalents or any other form of well bore wipers, the constitution of which comes within the scope of any of the claims of U. S. Letters Patent No. 2,826,253; provided, however, DEFENDANT may purchase from PATHFINDER OIL TOOL CO. for use or resale devices as provided in paragraph 5 following.

"5. DEFENDANT shall have the right to purchase only from PATHFINDER OIL TOOL CO. until March 11, 1975 rotating and reciprocating well bore wipers normally manufactured and offered for sale by PATHFINDER OIL TOOL CO., and DEFENDANT may sell or use any of said wipers it purchases from PATHFINDER OIL TOOL CO."

It is noted that the license to Weatherford in paragraph 4 is clearly limited to devices coming within the scope of the patent in suit. Defendant argues that had the parties intended paragraph 5 also to be so limited, they could easily have said so; and the fact that they did not, clearly indicates that they intended paragraph 5 to encompass all wipers, irrespective of whether they come within the scope of the patent in suit or not. I do not agree.

Paragraph 5 is limited to "rotating and reciprocating well bore wipers *normally manufactured and offered for sale* by PATHFINDER OIL TOOL CO." (emphasis added), and defendant does not controvert plaintiffs' statement that from the time of its inception the only wipers manufactured by the Pathfinder Oil Tool Company have been within the scope of the patent in suit. Accordingly, I construe paragraph 5 to be so limited and therefore find no misuse of the patent in suit within the terms of the Weatherford licensing agreement.

### The Flexel License

The license to Flexel, identified as Plaintiffs' Exhibit 77, was also granted in settlement of patent infringement litigation on the patent in suit. Paragraph 13 thereof, quoted below, is pertinent here:

"13. FLEXEL hereby sells, assigns, transfers, and conveys to PATHFINDER all right, title and interest in and to the design of Exhibit A attached to 'Admissions by Defendants' or any improvements thereon throughout the term of this

agreement as well as all right, title, and interest in and to U.S. patent application Serial No. *312019* bearing filing date of *September 27, 1963,* and any patent or patents which may issue thereon. C. W. TURBYFILL for and in consideration of the mutual covenants herein contained and for other good and valuable consideration, the receipt of which is hereby acknowledged, hereby agrees that throughout the term of this agreement, he will, and will cause any employees of FLEXEL to sign any and all oaths or other papers to effect the transfer of said design and its improvements and the patent application above identified."

Defendant asserts that plaintiffs have used the lever of the patent in suit to force an assignment by Mr. C. W. Turbyfill on a patent application on his own invention of a wiper-style device. It argues that such use by the plaintiffs of its patent constitutes misuse. Again, I do not agree.

The Supreme Court of the United States, in an opinion written by Mr. Justice Douglas, decided that the obtaining of an improvement patent from a licensee by assignment is clearly permitted by the patent laws in the case of Transparent-Wrap Machine Corp. v. Stokes & Smith Co., 329 U.S. 637, 67 S.Ct. 610, 91 L.Ed. 563 (1947). The dispute involved the requirement in an exclusive license whereby the licensee would assign to licensor (and petitioner) improvement patents relating to the subject matter of the exclusive license. The Supreme Court recognized that Congress had made all patents assignable and had legislated to make rights in the assignee equal to those in the patentee. The Court then referred to the statute from which present Section 261 of Title 35, U.S.C.A. is taken, and stated:

> "The statute does not limit the consideration which may be paid for the assignment to any species or kind of property. At least so far as the terms of the statute are concerned, we see no difference whether the

consideration is services [citation omitted] or cash, or the right to use another patent."

The Supreme Court considered the assignment-back clause and further stated with regard to the public interest:

> " * * * [T]he effect on the public interest would seem to be the same whether the licensee or the licensor owns the improvement patents."

*The Lloyd Jackson Sales Agreement*

This agreement between Lloyd Jackson and the Pathfinder Oil Tool Company is identified as Plaintiffs' Exhibit 78. Pertinent here are paragraphs II and XIV thereof, quoted below:

> "[Para. II] Supplier hereby appoints and designates Distributor as its sole agent for the sale of its tools, equipment and supplies in the territory covering all of the states of Oklahoma, Kansas and California, and Distributor hereby accepts such apportionment and agrees that he will not sell any competitive equipment in said territory while this agreement is in force.

> "[Para. XIV] Distributor agrees that he will not, for a period of one (1) year after any termination of this agreement for clause, directly or indirectly own, manage, operate, join, control or participate in the substantial ownership, management, operation or control of, any business in any area in which Distributor or Supplier now conducts business, which in any way competes with the business of Supplier."

Defendant asserts this agreement to constitute misuse of the patent in suit because in paragraph II Lloyd Jackson is prohibited from selling unpatented competitive equipment and in paragraph XIV this restriction is extended beyond the termination of the agreement. Again, I do not agree.

Defendant's contention that this sales agreement constitutes patent misuse would appear to rest upon Section 3 of

the Clayton Act codified at 15 U.S.C.A. § 14. This law provides:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods * * *, whether patented or unpatented, for use, consumption, or resale * * *, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods * * * of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

Exclusive dealing arrangements have been considered by many courts and have been found to not be violative of Section 3 of the Clayton Act. The following language found in Reliable Volkswagen Sales & Service Co. v. World-Wide Auto Corp., 182 F.Supp. 412 (D.N.J.1960) at 423, is in point:

"The mere making of a contract conditioned upon exclusive arrangements was not what was interdicted by Section 3 of the Clayton Act. The evil was present as the qualifying clause stated it to be—'where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.'"

I find that the exclusive dealing clause in the Lloyd Jackson sales agreement has no such effect and the agreement not to compete for one year after the termination of the agreement is reasonable.

I therefore find the plaintiff Pathfinder Oil Tool Company not guilty of patent misuse as alleged.

Having resolved the issues raised by defendant's motion for directed verdict and by plaintiffs' motion for judgment in accordance with the verdict, each motion is hereby granted in such part and denied in such part as is consistent with this Memorandum and Order. Counsel for defendant shall prepare and submit to the Court a judgment drawn in accordance with this Memorandum and Order, after having first obtained approval as to its form from opposing counsel.

On more than one occasion during the proceedings in this case, counsel for plaintiffs advanced a strong and persuasive argument in support of their proposition that the standard of invention last enunciated by the Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, had been watered down by Congress in the Patent Act of 1952, 35 U.S.C.A. § 103. While this Court was of the opinion that this legislation had no such effect, as reflected by the reliance placed upon A. & P. in this Memorandum and Order, it seemed wise to withhold final action until the Supreme Court decided the point in a case pending before it, Graham et al. v. John Deere Co. of Kansas City et al., 379 U.S. 956, 85 S.Ct. 652, 13 L.Ed.2d 553 (cert. granted Jan. 18, 1965). The Supreme Court has now acted on that case. In Mr. Justice Clark's exhaustive opinion, to which reference is here made for all purposes, in which he traces the development of the law relating to patentability from its constitutional origin to the present time, it is expressly held that the general level of innovation necessary to sustain patentability was and is unaffected by the Patent Act of 1952, 35 U.S.C.A. § 103. Graham et al. v. John Deere Co. of Kansas City et al., 86 S.Ct. 684 (Feb. 21, 1966). See also: United States v. Adams et al., 86 S.Ct. 708 (Feb. 21, 1966). Finding nothing inconsistent in this most recent holding of the Supreme Court with the position on patentability herein taken by this Court, I shall now proceed, of course, to immediately issue this Memorandum and Order.

The Clerk shall file this Memorandum and Order and shall send a copy to each counsel.