**HENSLEY EQUIPMENT COMPANY,
Inc., Appellant,**

v.

**ESCO CORPORATION, Appellee.**

**No. 20599.**

United States Court of Appeals
Ninth Circuit.

March 3, 1967.

Thomas O. Herbert, Flehr & Swain
(Flehr, Hohbach, Test, Albritton & Her-
bert), San Francisco, Cal., for appellant.

Edward J. Ruff, David Van Hoesen, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., Jerome F. Fallon, Dawson, Tilton, Fallon, Lungmus & Alexander, Chicago, Ill., for appellee.

Before HAMLEY and ELY, Circuit Judges, and MATHES, District Judge.

HAMLEY, Circuit Judge.

Esco Corporation (Esco), owner of Baer Patent No. 2,483,032 (Baer), brought this patent infringement suit against Hensley Equipment Company, Inc. (Hensley), manufacturer and seller of the accused apparatus. The Baer patent is a combination patent describing a mechanical device known in the heavy construction industry as a two-part excavating tooth.

Esco alleged that Hensley had infringed claims 5, 8 and 9 of Baer. Claim 5 describes the overall combination of the two parts of an excavating tooth. One part is an "adapter," which is secured to the lip of a piece of excavating equipment. The other part is a replaceable "wear point" which fits on the adapter and provides the actual cutting edge of the overall tooth. Claims 8 and 9 pertain only to the replaceable wear point. In addition to denying infringement, Hensley defended on the grounds that claims 5, 8 and 9 of Baer are invalid and that, by reason of misuse, Esco is estopped from claiming infringement.

The trial court found and concluded that claim 5 of Baer was not infringed. Therefore, without determining the valid-ity of claim 5, the court denied Esco any relief as to that claim. The trial court further found and concluded that claims 8 and 9 of Baer are valid, there was no misuse thereof, and Hensley infringed those claims. A judgment to this effect was entered, enjoining Hensley's further infringement of claims 8 and 9, and referring the matter of damages to a special master. The trial court's extensive memorandum opinion and order is reported *sub nom.*, Esco Corporation v. Hensley Equipment Company, Inc., 265 F.Supp. 863. .

Hensley appeals, arguing that the trial court erred both as to the validity and infringement of claims 8 and 9 of Baer.[1] We will first deal with the question of the validity of claim 8.

 The validity of a patent is dependent upon whether the described apparatus meets three explicit statutory conditions, namely: novelty and utility as defined in 35 U.S.C. §§ 101, 102 (1964), and nonobviousness, as defined in 35 U.S.C. § 103 (1964). See Graham v. John Deere Co. of Kansas City, 383 U. S. 1, 12, 86 S.Ct. 684, 15 L.Ed.2d 545. The trial court found and concluded that claims 8 and 9 of the Baer patent meet all three of these tests. Hensley contends that the trial court erred in concluding that these claims are novel and nonobvious.

Claim 8 describes a combination of twelve mechanical elements, each old in the art.[2] In determining whether this

1. In our discussion of these issues we will assume the reader is familiar with the background facts, including the general nature of the Baer patent, the state of the prior art, and the activities of Hensley in manufacturing and selling the accused device, all as stated in the reported memorandum opinion of the trial court.

2. Claim 8 of the Baer patent, in which we have inserted the bracketed numbers, reads as follows:

"8. An excavating tooth point [1] adapted to receive the wedge-shaped nose of an adapter [2] having upper and lower faces diverging from a substantially rounded front end portion, [3] substantially parallel side faces, and [4] an enlarged rear shank portion in which recesses extend from the side faces longitudinally of the nose and have substantially parallel side edges which are substantially parallel to one of the said diverging faces and disposed between the planes of the diverging faces, and [5] comprising, in combination, a spike portion of relatively heavy section, [6] a housing portion having side walls and an integral web forming with the spike portion, [7] a wedge-shaped socket having an open end at one end of the spike portion, [8] said wedge-shaped socket being of a depth and shape normally and firmly to receive

combination is novel and nonobvious, the parties and the trial court limited themselves, primarily, to a consideration of three basic features of claim 8, involving five elements. These are: (1) *tongues* which, Esco contends and the trial court held, must extend rearwardly from the wear point, designed to fit into recesses in the Baer adapter (elements 11 and 12 of claim 8); (2) a *spike portion* "of relatively heavy section" which, Esco asserts and the trial court held, refers to the upper portion of the wear point, such portion being heavy as compared to the side and bottom walls of the wear point (element 5 of claim 8); and (3) *spacing* between parts of the wear point and the adapter (elements 9 and 10 of claim 8).

Before the novelty and nonobviousness of the combination of these three features of claim 8 can be considered, it is necessary to resolve two questions raised concerning the construction of claim 8 as it relates to these features.

Hensley argues that Esco has itself construed the reference to tongues in elements 11 and 12 of claim 8 as not limited to tongues extending rearwardly from the wear point, but as also including tongues extending forwardly from the adapter, designed to fit recesses in the wear point. In support of this view, Hensley points out that Esco manufactured and sold wear points, bearing the Baer patent number, which were equipped with recesses in the wear point to receive tongues extending from a cooperating adapter.

Elements 11 and 12 of claim 8 explicitly provide that the tongues are to be on the wear point. They are also so shown in the patent drawings, and are so described in the patent specifications. Esco justifies the Baer patent marking on its manufactured wear points equip-ped with recesses as being in accordance with claim 5 of that patent. That claim does not expressly refer to tongues, but does call for "additional means stabilizing the tooth point relative to the adapter in the direction laterally to the nose." We think that forwardly extending tongues on a Baer adapter would be consistent with that provision.

It follows that Esco's use of the Baer patent number on such a two-part device did not constitute an interpretation of claim 8 as permitting recesses on the wear point to receive tongues on the adapter. We conclude that the tongues contemplated by claim 8 must extend rearwardly from the wear point.

The "spike portion of relatively heavy section," described in element 5 of claim 8, was referred to by the trial court as "the heavy upper spike portion of the point," meaning that the upper portion of the wear point is heavy as compared to the other walls of the wear point. Hensley argues that claim 8 does not specify that it is the *upper* portion of the spike which is to be "relatively heavy." Moreover, Hensley contends, claim 8 does not state that the spike portion is heavy as compared to the other walls of the Baer wear point.

It is true that claim 8 does not expressly state that the term "spike portion" is the upper portion of the wear point. In the specification, however, the "spike portion" and the "housing portion" are referenced to patent drawings which show that the spike portion is the upper portion of the Baer wear point, as described in claim 8. It is proper to resort to the specification for the purpose of clarifying the reference to the "spike portion" in claim 8, since in this regard the specification is not in conflict with that claim.

the wedge-shaped nose of the adapter [9] with space between the nose and adapter at the vertex of socket and [10] with said spike and housing portions substantially spaced from the shank portion of the adapter [11] and said side walls of the housing portion having integral projecting tongues thereon adjacent the open end of the socket, [12] and said tongues having substantially parallel side edges adapted to fit into said recesses of the adapter shank portion when the nose is seated in the socket, thereby to support the tooth on the adapter in directions transverse to the wedge faces."

Claim 8, standing alone, does not substantiate the trial court's view that the spike portion is to be heavy as compared to the other walls of the Baer wear point. Nor does the specification say anything regarding the heaviness of the spike portion. However, since the patent drawings show the upper spike portion to be relatively heavier than the bottom portion of the Baer wear point, we think the trial court was justified in construing the quoted language of claim 8 as referring to the weight of the upper spike portion in comparison to the weight of the other walls of the claim 8 wear point.

For the reasons stated above, we accept, as accurate, the trial court's construction of those elements of claim 8 which describe the tongues and spike portion of the wear point.

At the trial, Hensley took the position that Mekeel Patent No. 1,845,677 (Mekeel '677), issued on February 16, 1932, is the most analogous prior art.[3] In view of Hensley's position in this regard, the parties and the court seem to have proceeded at the trial on the theory that the question of whether the combination of the three features of claim 8, referred to above, is novel and nonobvious, could best be determined by comparing those features with the assertedly similar features of Mekeel '677. The parties have proceeded similarly on this appeal.

The Mekeel '677 patent does not, as in claim 8 of Baer, show a wear point with rearwardly extending tongues. Instead, the patent drawings and specification show that there are recesses at the rear of the Mekeel wear point, which cooperate with mating tongues on the Mekeel adapter.[4] Hensley argues, however, that the teaching of Mekeel '677 concern-ing tongues is "far broader" than as depicted in the Mekeel patent drawings.

In support of this assertion, Hensley refers to language in the Mekeel '677 specification regarding a modification of the invention. According to this modification, tongues formed in "one member" of the assembly project beyond that member to engage in recesses in the "other member" of the assembly. It is further stated in this part of the Mekeel '677 specification that this modification is "illustrated" in the patent drawings. Hensley argues from this language that Mekeel places no special significance on whether the tongues extend rearwardly from the wear point, or forwardly from the adapter.

We think that if Mekeel '677 contemplated rearwardly extending tongues the patentor would have employed more explicit language than can be gleaned from the references in the specification to "one member" and "illustrated." This is especially so in light of the additional language of the specification which states that the tongues of the adapter are to engage in suitable recesses " * * * formed in the sides of the point at the base thereof." Moreover, the so-called modification, as shown in figures 7 and 8 of the patent drawings, depicts recesses in the wear point to receive tongues extending from the adapter.

It may be, as Hensley argues, that the Mekeel '677 tongue arrangement is equivalent to that which is contemplated by claim 5 of Baer. However, we are not here concerned with claim 5. It is also true that the purpose of the Mekeel '677 tongue arrangement is to provide stabilization and that this is also the prime function of the rearwardly extending tongues of Baer. But the trial court found, in effect, that substantially great-

3. Hensley also relied, to some extent, on a second Mekeel Patent No. 1,951,988 (Mekeel '988) issued on March 20, 1934, and several other prior combination patents. Neither of the Mekeel patents was apparently considered by the Patent Office in the prosecution of the Baer patent. Consequently, the normal presumption of validity which arises on issuance of a patent is largely dissipated. See Bentley v. Sunset House Distributing Corp., 9 Cir., 359 F.2d 140, 146.

4. The claims of Mekeel '677 make no mention of tongues extending in either direction.

er stabilization is attained by the rear-wardly extending tongues in claims 8 and 9 of Baer, and that the wear point is strengthened in placing the recesses in the adapter rather than the wear points. These findings of fact are not clearly erroneous and, in our view, undermine Hensley's contention that the Mekeel '677 tongues are the equivalent to the Baer tongues.

Hensley argues that the relatively heavy spike portion described in claim 8 of Baer is also found in Mekeel '677. However, we have indicated our agreement with the trial court's construction of claim 8 of Baer as describing a relatively heavy *upper* spike portion. Mekeel '677 does not describe a relatively heavy *upper* spike portion.

Hensley contends that the spacing feature of Baer's claim 8 is also present in Mekeel '677, because such spacing is inherent in the Mekeel structure and would occur whether intentional or not. For present purposes we will assume this to be the case.

This brings us to the question of whether claim 8 of Baer describes a novel combination as compared to the prior art exemplified by Mekeel '677. The trial court held that claim 8 is novel because the three features of that claim, as described above, while individually old in the art, coact in the claim 8 combination to bring about a new result. In reaching this conclusion, the court accepted testimony to the effect that, in the claim 8 combination, the coaction between these features produces a cantilever effect which enables the heavy upper spike portion, with the aid of the spacing between the point and adapter, to transmit impact forces from the tip of the wear point to the rearwardly extending tongues.

The result is that stresses are, for the most part, transmitted from the tip of the wear point to the adapter, "leap-frogging" the pin which unites the adapter and the wear point. Deforma-tion of the pin is thereby avoided and, absent deformation, the pin does not interfere with the easy removal of the wear point when replacement becomes necessary.

The trial court further found, in effect, that this beneficial coaction is not obtained in Mekeel '677, or in any other prior art.

In our opinion these findings are not clearly erroneous, and amply sustain the trial court's ultimate finding that the Baer claim 8 combination is novel within the meaning of the patent laws.

The trial court also concluded, in effect, that the claim 8 combination is nonobvious as that term is used in 35 U.S.C. § 103. Under this statute, a patent is invalid if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which that subject matter pertains.

The obviousness or nonobvious-ness of the subject matter of a patent presents a question of law. National Lead Company v. Western Lead Products Company, 9 Cir., 291 F.2d 447, 450–451. However, that legal question is to be determined against a factual background, with particular emphasis on three considerations, namely: the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art. See Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545.[5]

In Jeddeloh Brothers Sweed Mills, Inc. v. Coe Manufacturing Company, 9 Cir., 375 F.2d 85, decided November 23, 1966, but in which an amended opinion was filed today, we had occasion to review the above-stated principles. We noted that these principles are to be applied with special strictness in

5. Certain secondary considerations such as commercial success, long felt but unfulfilled needs, failure of others, and copy-ing, are also relevant indicia of obviousness and nonobviousness. *Graham*, supra 383 U.S. at 17–18, 86 S.Ct. 684.

determining the patentability of mechanical combinations.

■ Having in mind the strictness with which we must apply the nonobviousness test, we nevertheless hold that the trial court did not err in concluding that the new result, obtained by the coaction of the three critical features of claim 8 of Baer, is not obvious in the statutory sense. In making this determination, the trial court gave thorough consideration to the essential factors referred to above. Following the same process we reach the same conclusion. The reasoning underlying this determination is clearly set forth in the memorandum decision of the trial court, and need not be repeated here.

■ We reach a different result with regard to the validity of claim 9 of the Baer patent. While claim 9 refers to an integral "spike" portion, it does not provide, as in element 5 of claim 8, that it shall be "of relatively heavy section." Thus, the spike portion of the apparatus described in claim 9 need not be the upper portion of the wear point housing, nor need it be relatively heavy as compared to the other walls of the wear point. It was these features of the claim 8 spike portion which, in combination with the rearwardly-extending tongues and, to some extent, the spacing, resulted in the cantilever effect produced by the claim 8 device. Without that cantilever effect, the claim 9 combination is of doubtful novelty and, we conclude is obvious.

In view of our determination that claim 9 of Baer is invalid, the remaining question of infringement pertains only to claim 8.

Hensley is in the business of manufacturing and selling replacement parts for equipment used in the heavy construction industry. About 1960, Hensley began making replacement wear points designed to fit the Baer-type adapter. For this purpose Hensley purchased five Esco two-part excavating teeth in order to capture the dimensions that are necessary to fit Hensley wear points to Esco adapters. After Hensley had manufactured 109 wear points to fit an Esco-type adapter, an official of Esco called upon the president of Hensley and stated that these Hensley wear points infringed the Baer patent because Hensley's rearwardly extending tongues "fit snugly into the recesses of our adapters."

Hensley immediately stopped production and made certain changes in the pattern of its wear points in order to keep the tongues from fitting snugly into the recesses of the Esco adapter. The changes that were made were to alter the formation of the tongues to provide "an eighth of an inch clearance and a hardened piece of steel."

At the trial Hensley admitted that, assuming the validity of the Baer patent, the first 109 wear points manufactured by Hensley infringed claims 8 and 9 of that patent. The trial court found that Hensley's changes in design and construction of its new wear points were insufficient to avoid its previously admitted infringement of claims 8 and 9 of Baer. This determination was based primarily upon the trial court's ultimate finding that the tongues in Hensley's Esco-type wear points serve substantially the same stabilization purpose as do the tongues in claims 8 and 9 Baer wear points.

■ In its memorandum opinion, the trial court reviewed at length the evidence which led it to make this determination and considered the principal arguments advanced by Hensley which are renewed on this appeal. For the reasons stated in that opinion, we hold that the trial court did not err in determining, that with respect to all of Hensley's Esco-type wear points, Hensley infringed claim 8 of the Baer patent.[6]

6. Some arguments concerning infringement, advanced by Hensley on this appeal, are not explicitly dealt with in the trial court's memorandum opinion. We have considered them as best we can without the advantage of personal participation in the trial, and conclude that none of them are of sufficient merit to warrant rejection of the trial court's findings and conclusions on this branch of the case.

The judgment is affirmed with regard to the validity and infringement of claim 8 of Baer Patent No. 2,483,032, and reversed with regard to the validity and infringement of claim 9 of that patent. The parties shall bear their own costs on this appeal.