382 F.2d 541
 PAYNE METAL ENTERPRISES, LIMITED, a corporation, and Payne Manufacturing Company, Limited, a corporation, Appellants,
v.
James E. McPHEE, and Anchor Products, Inc., a corporation, Appellees.
 No. 21170.
 United States Court of Appeals Ninth Circuit.
 July 27, 1967.
 
 Thomas Mahoney, Mahoney, Halbert & Hornbaker, Santa Monica, Cal., for appellants.
 Ashley Stewart Orr, Kendrick, Subkow & Stolzy, Los Angeles, Cal., for appellees.
 Before BARNES, HAMLEY and ELY, Circuit Judges.
 HAMLEY, Circuit Judge:
 
 
 1
 This suit involves the validity and infringement of U. S. Design Patent No. 176,986 (McPhee No. '986), issued to James E. McPhee on February 28, 1956, and thereafter assigned to Anchor Products, Inc. (Anchor). The action arose after Anchor gave written notice of infringement to Payne Metal Enterprises, Limited and Payne Manufacturing Company, Limited, jointly referred to herein as Payne Metal. Upon receiving this notice, Payne Metal commenced this action against McPhee and Anchor, seeking a declaratory judgment that McPhee No. '986 is invalid and not infringed by Payne Metal, together with correlative injunctive relief. McPhee and Anchor denied invalidity and noninfringement, and Anchor counterclaimed for damages and injunctive relief on the ground of infringement.
 
 
 2
 After trial without a jury, the district court entered an interlocutory judgment and order on March 31, 1966, holding McPhee No. '986 valid and infringed. Payne Metal appeals.
 
 
 3
 We first summarize the essential findings and conclusions of the district court. McPhee, recognizing a need for a newly-designed liquid pourer, designed the device described and claimed in McPhee No. '986. This device, manufactured and marketed by Anchor, met with acceptance by the trade and sales records indicate that the product is commercially successful.
 
 
 4
 The district court found that during prosecution of McPhee No. '986, the patent office had before it the "most pertinent prior art references," namely: (1) McPhee patent No. 2,667,290 (McPhee No. '290), a mechanical patent entitled "Liquid Dispenser for Bottles," issued to McPhee on January 26, 1954, (2) Australian patent No. 9658/32 (Australian) entitled "An Improved Liquid Measuring and Dispensing Device," issued to Allan B. Ferguson on October 14, 1932, (3) the publication "House Furnishings Review" for May, 1949, page 74, an advertisement for Modern Sales Company disclosing a bottle pourer with a detachable music box, and (4) the publication "Giftwares" of July 6, 1953, page 86, an advertisement of Anchor for an "Automatic Liquor Pourer."
 
 
 5
 Payne Metal asserted in the trial court that the patent office did not have before it one of the most pertinent prior art references, F. H. Maloney patent No. 2,275,051 (Maloney) for a "Dispensing Device." The trial court found, however, that neither the prior art references which were before the patent office, nor the Maloney patent "suggest the design of the patent in suit to the mind of a person having ordinary skill in the art, * * *" The trial court concluded that "[t]he design claimed in the McPhee ['986] patent in suit discloses a design which involves invention which was not obvious to those having ordinary skill in the art in view of the prior art."
 
 
 6
 The trial court also concluded that McPhee No. '986 is valid in all respects and further found that Payne Metal's devices were and are infringing this patent.
 
 
 7
 We turn first to the question of the validity of McPhee No. '986.
 
 
 8
 The essential requirements for issuing a design patent are stated in 35 U.S.C. § 171 (1964).[1] As this court stated in Bliss v. Gotham Industries, Inc., 9 Cir., 316 F.2d 848, 849-850, the design in question must not only be new, original and ornamental, it must also be the result of invention.
 
 
 9
 It has been held by this court that the standard of invention required for design patents is the same as that for mechanical patents. See Brown & Co. v. DeBell, 9 Cir., 243 F.2d 200, 202. The legislative expression of the standard of invention is now set out in 35 U.S.C. § 103 (1964), quoted in the margin.[2] See 2 WALKER ON PATENTS (Deller's Ed. 1964), §§ 164, pages 757, 769. As the Supreme Court pointed out in Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 14, 86 S.Ct. 684, 15 L.Ed.2d 545, this section was not intended to establish a new standard, but merely codified the standard to emphasize "non-obviousness" as the operative test of the section, rather than the less definite "invention" language.
 
 
 10
 The Third Circuit, in a leading case with regard to the application of section 103 to design patents, R. M. Palmer Co. v. Luden's Inc., 3 Cir., 236 F.2d 496, 500, laid down the following overall standard for determining the validity of a design patent:
 
 
 11
 "The specifications for the granting of a design patent, as set forth in the Act are invention of a new, original and ornamental design non-obvious to a person of ordinary skill in the art."
 
 
 12
 Appellees McPhee and Anchor contend that since the trial court made factual findings to the effect that McPhee No. '986 would not have been obvious to a person ordinarily skilled in the art, this court cannot reject these findings unless they are "clearly erroneous" under Rule 52(a), Federal Rules of Civil Procedure.
 
 
 13
 We do not agree. This court has recently stated that "[t]he obviousness or nonobviousness of the subject matter of a patent presents a question of law." Hensley Equipment Company, Inc. v. Esco Corporation, 9 Cir., 375 F.2d 432, 436.[3] Therefore, although the trial court labeled its determination as to the obviousness of the McPhee No. '986 as a finding of fact, for purposes of review in this court it is still considered a question of law, not subject to the limitations on review set forth in Rule 52(a), Federal Rules of Civil Procedure.
 
 
 14
 As we pointed out in Hensley, however, the legal question revolving around the obviousness of a particular patent must be determined against a factual background, with particular emphasis on the three relevant considerations which must be taken into account in applying section 103 as set forth by the Supreme Court in Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17-18, 86 S.Ct. 684, namely "the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art." Hensley, supra, 375 F.2d at 436. The ultimate question, therefore, which this court must decide is whether the changes over the prior art resulted in an appearance of the design as a whole which would not have been obvious to a person of ordinary skill in the art. See Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Company, Inc., 2 Cir., 260 F.2d 637, 641; In re Crotty, Ct.Cust. & Pat.App., 272 F.2d 957, 959.[4]
 
 
 15
 Figures 1, 2 and 3 opposite show McPhee No. '986, and the twwo most pertinent prior patents, respectively.
 
 
 16
 NOTE: OPINION CONTAINING TABLE OR OTHER DATA THAT IS NOT VIEWABLE In determining that the design of McPhee No. '986 (Figure 1) was nonobvious, the trial court gave primary consideration to two features of that patent, namely: (1) a "pinched-in waistline" at the point at which the skirt joins the body of the apparatus, and (2) a skirt that "flows freely away from the body."
 
 
 17
 The only changes of substance in the McPhee design patent No. '986 over the prior McPhee mechanical patent were the addition of a chromed skirt which extended down over the neck of the bottle, and the waistline at the point at which the skirt joined the body of the device. It follows, therefore, that if the McPhee No. '986 made any advance in the design art, it was only in the addition of these two additional features.
 
 
 18
 At the trial and in its brief to this court, Payne Metal relied only upon the Australian patent and the Maloney patent as the most analogous patents in the prior art.[5] We need look no further, therefore, than these prior art references in determining the obviousness or nonobviousness of McPhee No. '986.
 
 
 19
 The Australian patent, pictured above (Figure 2), shows a straight projection extending downwardly from the body of the measuring device. In the specification of the Australian patent, the extended portion is described as follows:
 
 
 20
 "An annular depending flange is also preferably formed on the bottom of the lower hemispherical part to surround and protect the uppermost part of the cork."
 
 
 21
 The position of the flange on the Australian pourer is suggestive of the skirt which extends from the body of McPhee No. '986, although, because of its comparative brevity, it might be likened to a "mini-skirt." But even the length of the skirt surrounding the cork of the bottle in McPhee No. '986 was conceived in the prior art. The Maloney device (Figure 3), patented in 1942, has a "cap" member with a cylindrical shape which fits over the cork and neck of a bottle and a "downwardly extending annular skirt portion" which protects the neck of the bottle. Although the general shape of the Maloney device is dissimilar from McPhee No. '986, the extension of the skirt, which McPhee contends is unique in his device, is suggested by the prior Maloney patent.
 
 
 22
 Considering the "skirts" in the Australian and Maloney patents together, the only variation made by McPhee No. '986 was to cant the skirt away from the body of the pouring device, thereby forming a conical-shaped skirt, instead of angling the skirt straight downward as had been done in the previous patents. This minor change, however, is one which, we believe, could occur to a person untrained in the art and does not require the exercise of an inventive or originative faculty. It does not manifest some exceptional talent beyond the skill of the ordinary designer chargeable with knowledge of the prior art. Considering the McPhee No. '986 as a whole, we are of the opinion that the skirt on this patent would have been obvious at the time it was conceived to a person having ordinary skill in the pertinent art.
 
 
 23
 The only other allegedly unique feature which McPhee and Anchor contend lends an inventive quality to their patent as a whole, is the "pinched-in waistline" which is formed at the point where the body of the pouring device joins the flared or tapered skirt.[6] The waistline effect was not produced in the prior patents because the skirts in those patents extended straight down from the body of the pouring device.
 
 
 24
 Under 35 U.S.C. § 171 (1964), a patentable design must also be ornamental. This requires that the design be the product of aesthetic skill and artistic conception. See Bliss v. Gotham Industries, Inc., 9 Cir., 316 F.2d 848, 850.
 
 
 25
 This does not mean that a design is not patentable if it also embodies a functional or utilitarian purpose. See Brown & Co., Inc. v. DeBell, 9 Cir., 243 F.2d 201, 203. But the rule is otherwise if the primary purpose of the design was functional. As this court stated in Bliss, a design patent is invalid and void if "* * * the design was dictated primarily by functional or mechanical requirements and any ornamental or socalled pleasing effect was merely a by-product thereof." 316 F.2d at 851.
 
 
 26
 Upon cross-examination, McPhee testified that the "basic reason" for flaring or tapering the skirt in the McPhee design patent No. '986 was to make "a real fine application of the die-casting process." It is apparent from McPhee's own testimony that the "basic purpose" of the flared skirt was for ease of construction of the pouring device and not to enhance the aesthetic quality of the McPhee design. Consequently, in the words of this court in Bentley v. Sunset House Distributing Corp., 9 Cir., 359 F.2d 140, 145, since the tapered skirt was dictated primarily by the functional requirements of a die-casting process, the resulting pinched-in waistline was "only an inadvertent byproduct and * * * any pleasing aesthetic effect was a minor windfall." See, also, Thabet Manufacturing Company v. Kool Vent Metal Awning Corporation, 6 Cir., 226 F.2d 207, 212.
 
 
 27
 Apart from this consideration, we also conclude that the flaring of the skirt to produce a waistlike effect, would in any event have been obvious to a person having ordinary skill in the art.
 
 
 28
 For the reasons stated above, we hold that the trial court erred in failing to declare McPhee No. '986 invalid under the terms of the governing statutes. See 35 U.S.C. §§ 103, 171 (1964).
 
 
 29
 McPhee and Anchor have asserted a number of secondary considerations in an attempt to establish patentability of McPhee No. '986, i. e., presumption of validity arising from the issuance of the patent, alleged copying of the McPhee patent, a previously unfulfilled need for such a patent, and commercial success of McPhee No. '986. However, in view of our holding that McPhee patent No. '986 is invalid for obviousness and because the primary purpose of one feature of the design was utilitarian, it is unnecessary to consider these other factors. As this court said in Brunswick Corporation v. Columbia Industries, Inc., 9 Cir., 362 F.2d 172, 175, "[t]he law appears to be clear that such factors cannot make patentable a patent which is invalid for lack of invention."[7]
 
 
 30
 In view of our determination that McPhee No. '986 is invalid, we do not reach the question of the asserted infringement by Payne Metal's devices. See Bliss v. Gotham Industries, Inc., 9 Cir., 316 F.2d 848, 851.
 
 
 31
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 Section 171 reads as follows:
 "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.
 "The provisions of this title relating to patents for inventions shall apply to patents for design, except as otherwise provided."
 
 
 [2]
 Section 103 reads as follows:
 "§ 103. Conditions for patentability; non-obvious subject matter.
 "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."
 
 
 [3]
 In National Lead Company v. Western Lead Products Company, 9 Cir., 291 F. 2d 447, this court was faced with a similar circumstance in which the trial court had made factual findings with regard to the obviousness of the patent in question under section 103. With respect to these findings, however, this court said the following:
 "It is to be noted that findings of fact numbers 7 and 8 are little more than a paraphrase of Title 35 U.S.C.A. § 103, and a legal conclusion of want of invention. Such findings should better be denominated conclusions of law. Great Atlantic & Pacific Tea Co. v. Supermarket Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162." 291 F.2d at 450-451.
 
 
 [4]
 In their brief to this court, McPhee and Anchor direct our attention mainly to the question of whether the McPhee patent is "new, original and ornamental" in accordance with the terms of the design patent statute, 35 U.S.C. § 171 (1964). As has been pointed out, however, there is the additional requirement of nonobviousness under 35 U.S.C. § 103 (1964), which must also be met to establish the validity of a design patent, and it is this latter requirement with which this court concerns itself in the immediately following discussion
 
 
 [5]
 The only publication relied upon by Payne Metal at the time of the trial was an advertisement in "House Furnishing Review" for May, 1949, at page 74, for a bottle pourer similar in design to the McPhee mechanical design patent No. '290, except that the device advertised had a detachable music box which played as the device poured a liquid
 
 
 [6]
 Although theactual pouring device manufactured by Anchor does show a distinct indented waistline at this juncture of the device, the pourer illustrated by McPhee No. '986 shows only a slight waistline formed merely from the angle which results where the flared skirt meets the body of the device.
 
 
 [7]
 This statement inBrunswick is not contrary to the view we expressed in Brown & Co., Inc. v. DeBell, 9 Cir., 243 F.2d 200, 202, that "[c]ommercial success is of great importance in determining the validity of a design patent." Commercial success tends to show that the design was new, original and ornamental, which are essential elements under 35 U.S.C. § 171. But it does not tend to show that the design was nonobvious, this being an essential element under 35 U.S.C. § 103. See Alladin Plastics, Inc. v. Jerrold Stephan Co., 9 Cir., 362 F.2d 532, 534.