Laurent REGIMBAL et al., Plaintiffs-Appellants,

v.

Peter SCYMANSKY et al., Defendants-Appellees.

Laurent REGIMBAL et al., Plaintiffs-Appellees,

v.

Lloyd BRULOTTE et al., Defendants-Appellants.

Laurent REGIMBAL et al., Plaintiffs-Appellees,

v.

Melvin J. NEWHOUSE et al., Defendants-Appellants.

Nos. 23947, 23975 and 23976.

United States Court of Appeals, Ninth Circuit.

April 20, 1971.

As Amended on Denial of Rehearing July 20, 1971.

Richard W. Seed (argued), Carl G. Dowrey, of Seed, Berry & Dowrey, Seattle, Wash., John Gavin, of Gavin, Robinson, Kendrick, Redman & Mays, Yakima, Wash., Joseph C. Murphy, Toppenish, Wash., for appellant Laurent Regimbal.

Margaret E. White (argued for Newhouse), Arlington C. White (argued for Brulotte), of White & White, San Francisco, Cal., C. W. Halverson, of Halverson, Applegate & McDonald, Yakima. Wash., for appellees.

Before CARTER, KILKENNY and TRASK, Circuit Judges.

JAMES M. CARTER, Circuit Judge.

Appellants in case #23947 filed this action against appellees for infringement, contributory infringement, and inducing infringement of appellants' Regimbal Patent #2,699,172. The district court held that the Regimbal patent was invalid for obviousness under 35 U.S.C. § 103. The court's findings indicate, in the alternative, that if the patent were valid, then appellees' actions constituted infringement. No reference to these findings appears in the judgment. We affirm the district court's determination that the Regimbal patent is invalid and, therefore, do not reach the infringement issues in the cross-appeals (No. 23,975 and 23,976). The cross-appeals are dismissed.

## I. *Factual Background:*

Appellants, in case #23947, Regimbal and Thurmer, are the joint inventors and joint owners of the patent in issue [Regimbal #2,699,172]. Appellants' patent describes a "vertical" or "up-right" hop-picking machine in which the hop vines hang vertically with their butt ends at the top as they are picked. This type of machine is distinguishable from a "horizontal" machine, in which the hop vines move with their length horizontally as they are picked.

The allegedly infringing machine is manufactured by the Dauenhauer Manufacturing Company, pursuant to Dauenhauer #2,677,378. In 1949, Dauenhauer was granted permission to inspect a prototype version of appellants' machine. Thereafter, Dauenhauer returned to his factory, copied appellants' machine, and filed a patent application on August 16, 1950 that resulted in patent #2,677,378. Meanwhile, appellants had filed their application on May 16, 1950, from which issued the patent in suit [#2,699,172].

The appellees are hop growers in Washington, who have used the allegedly infringing Dauenhauer machine, repaired such machines, and maintained a supply of spare parts for such machines to be used in the repair of their own machines and for sale to neighboring hop growers. Dauenhauer was initially a party defendant to this suit, but he was dismissed from this action on a motion based on improper venue. Another defendant, Peter Scymansky, was dismissed from this action pursuant to a consent decree.

## II. *The Validity of the Regimbal Patent:*

The district court determined that appellants' machine was a combination of elements present in the prior art of hop-picking machines and in the relevant prior art in related fields. We agree. Only claim 13 of the Regimbal patent remained in issue. We set forth the elements of that claim (as described in appellants' brief), and cite the relevant prior art that supports the district court's finding:

[Claim 13] In a hop-picking machine, (1) A pair of endless belts each comprised of a plurality of endless chains trained top and bottom about sprocket

wheels journaled for rotation about vertically-spaced horizontal axes and mounted one belt alongside the other; [Crowley #2,496,858 (1950); Horst Jr. #2,447,122 (1948)];

(2) with the opposed inner runs of the belts occupying converging vertical planes to describe a flared picking throat there between, [Horst Jr. #2,447,122 (1948); Griswold #2,536,927 (1946)];

(3) said belts being each provided at equidistantly spaced intervals of the circumference with transversely extending picking combs which are vertically staggered as between the two belts, [Crowley, #2,496,858 (1950); Griswold #2,536,927 (1946); Horst Jr. #2,447,122 (1948)];

(4) and lap one another at the narrow end of the throat, [Crowley #2,496,-858 (1945); Livermon # 1,749.040 (1930)—threshing machine; Harrington #1,350,452 (1920)—threshing machine; Horst #1,008,914 (1911)];

(5) means for driving the belts to have the combs move in a downward direction along said opposing inner runs of the belts, [Crowley #2,496,-858 (1950); Griswold #2,536,927 (1946); Horst Jr. #2,447,122 (1948)];

(6) means for giving continuous travel to a succession of suspended hop vines to cause the vines to move without interruption progressively through the picking throat entering at the wide end and leaving the narrow end of the latter, [Hinds #2,064,748 (1936); Horst #1,008,914 (1911); Miller #1,054,360 (1913); Thys #2,193,354 (1938); Griswold #2,536,927 (1946); Horst Jr. #2,447,122 (1943)];

(7) and supporting means bearing against portions of the outer sides of said opposing inner runs to resist outward bellying of the latter as the vines approach and traverse the narrow end of the throat. [Mundale #799,750 (1905); Harrington #1,-350,452 (1920)—threshing machine; Randolph #555,533 (1896)—threshing machine].

There is no real contention by appellants that the prior art does not show all the above elements except numbers 4 and 7. Appellants stressed these elements to the trial court and on appeal as not being found in the prior art. We cited the prior art references, *supra*, that clearly show these elements. The fact that some are found in the related art of threshing machines, does not destroy their pertinence or negate the fact that a mechanic skilled in the art would have had available these references.

In addition to elements 4 and 7 of the appellants' patent, appellants point to what is called the distinguishing feature of the patent in suit, "* * * the fact that the present invention initially works on only the side edge portion of the foliage and then causes the fingers to penetrate with progressive travel of the vines * * *" [Regimbal #2,-699,172 (1950), col. 4, lines 79–82]. This operation was completely disclosed in the Miller patent #2,139,029 (1938) p. 2, col. 2, lines 39–40.

### III. *Inconsistency Among the Findings of Fact and the Conclusion of Law:*

Appellants assert that there are inconsistencies between certain findings of fact and between certain findings and the related conclusion of law. We do not agree.

In substance, the district court found that: the device described by appellants' patent did a better job of hop-picking than other machines existing in the prior art of hop-picking devices [Finding XX];[1] The combination of elements

---

1. Finding of Fact XX

"Upright hop-picking machines embodying the Regimbal-Thurmer invention require considerably less labor per unit of output than either the horizontal or portable machines, require appreciably less space than other stationary machines, are much easier to load than the horizontal or portable machines, do not damage the hops, have considerably greater output, and do a better job of stripping the vines.

in the appellants' patent was new and novel [Finding XXIV] ;[2] the combination in appellants' patent was novel in that there was a different range and positioning of old elements [Finding XXVI] ;[3] the *various elements* or parts of appellants' patent performed no different function in combination than they did individually [Finding XXV] ;[4] and, the *combination of elements* in appellants' patent produced a more efficient result, but not a "new and unexpected result" [Conclusion II].[5]

Although they are not artfully drawn, we have determined that the contested findings and conclusion of law are consistent. The trial court had previously announced its decision and general findings. Any appearance of inconsistency was created in part by several amendments to the original findings, which amendments were offered by the appellants and adopted by the court. To the extent that these amended findings contributed to the purported inconsistency, it was confusion of the appellants' own making.

Only Finding of Fact XXII requires specific explanation. Finding XXII states in pertinent part:

"The picking fingers along the longitudinal side edges of the belts overlap at the narrow end of the picking throat and are spaced apart at the wide infeed end of the picking throat. The V of this picking throat is horizontal whereas the direction of travel of the picking fingers is vertical. However, the prior art shows a narrowing but not an overlapping."

Regarding the absence of "overlapping" in the prior art, the court was undoubtedly referring only to the prior art in the field of hop-picking machines.[6]

These results of the combination of such elements recited in the claims in issue exceed the accumulation of the results of the individual elements when present in other combinations and arrangements in the prior art."

2. Finding of Fact XXIV
"The combination of elements recited in the patent claims in issue are new and novel, and have utility. All of the elements in the combination have been disclosed by the prior art, but the combination of elements, and the elimination of some old elements in the prior art recited in the patent claims, is new and novel."

3. Finding of Fact XXVI
"The combination in the patent in suit is novel in that it was necessary to have a different range and positioning of the old components than is to be found in the prior art; in this situation you have a different range and positioning of the chains, the graspers, caterpillars, picking fingers, than in any of the old disclosures."

4. Finding of Fact XXV
"The picking fingers, the caterpillars, the throat, chains, sprockets, drive, of the patent in suit perform no different function in the combination than they do out of it; nor do these old components in the total combination of the patent in suit, or any of the groupings of old components which go to make up the total combination, co-act to produce a new result as compared to the total combination, the grouping of components, in the prior art."

5. Conclusion of Law II
"The patent in suit is a combination patent in that old mechanical elements are combined to produce a more efficient result but not a "new and unexpected result." The court further concludes that a person reasonably skilled in the art and possessed of all information available by virtue of the prior art as disclosed in the trial of the cause would, after experimentation, be able to design and combine a machine of the same capabilities and characteristics as those possessed by the Regimbal-Thurmer upright hop-picker, and that under the authority of Jeddeloh v. Coe, 375 F.2d 85 as contrasted to Hensley v. Esco, 375 F.2d 432, plaintiffs' action against defendants must be dismissed for want of invention."

6. We think the prior art in hop-picking machines clearly shows the overlapping of fingers. Crowley #2,496,858 (cited above as to element #4), in describing the relationship between the opposing columns of vertically staggered picking fingers, states: " * * * and their locations are so determined as to permit the picker-bars of the columns to alternately *overlap* when the vertical columns

Thus, the court did not find that "overlapping" was not present in the prior art of related fields, such as threshing machines.

This construction of Finding XXII is firmly supported by examination of the court's following Finding (XXIII), which states:

"The Regimbal-Thurmer machine provides supporting means bearing against the outer sides of the opposed inner runs of the picking belts at the narrow end of the picking throat to resist outward bellying of the inner runs so that the overlap of the picking fingers at the narrow end will be maintained. This combination of the supporting means with the overlapping picking fingers at the narrow end of the picking throat is not disclosed in any of the prior art hop-picking machines."

It is clear that both findings discuss the "overlapping" of picking fingers, and that Finding XXIII expressly limits its scope to the prior art in the hop-picking field. The final sentence in Finding XXIII was added at appellants' request. The record shows that the district judge insisted that the amendment would be allowed only if it specifically indicated that the court was speaking only of the prior art of hop-picking machines.

Therefore, Finding XXII is not inconsistent with the court's conclusion that the elements of appellants' claim 13 were all present in the pertinent prior art, including that in such related fields as threshing machines.

IV. *Validity of Conclusion of Law II:*

In its Conclusion II, the district court stated:

"The patent in suit is a combination patent in that old mechanical elements are combined to produce a more efficient result, but not a 'new and unexpected result.' The court further concludes that a person reasonably skilled in the art and possessed of all information available by virtue of the prior art as disclosed in the trial of the cause, would, after experimentation, be able to design and combine a machine of the same capabilties and characteristics as those possessed by the Regimbal-Thurmer upright hoppicker, and that under the authority of Jeddeloh v. Coe, 375 F.2d 85 as contrasted to Hensley v. Esco, 375 F.2d 432, plaintiffs' action against defendants must be dismissed for want of invention."

Appellants attack Conclusion of Law II on two grounds: (1) the court's reliance on Jeddeloh Bros. Sweed. Mills Inc. v. Coe (9 Cir. 1967) 375 F.2d 85 was improper; and (2) the court erred by employing the phrase "new and unexpected results" as the *test* for non-obviousness, rather than as merely *"evidence of* non-obviousness."

First, the court's reliance on *Jeddeloh* was as an aid in articulating its factual determinations in the instant case. The reporter's transcript indicates that the district judge found that the mode of expression of various findings in *Jeddeloh* accurately described his determinations of the facts in the instant case. Consequently, several of the district court's findings are patterned closely after similar determinations discussed in the *Jeddeloh* opinion.

For example, in *Jeddeloh*, the court pointed out that "none of the individual components of the Parker combination perform any different functions in the combination than they do out of it." [375 F.2d at 91] Hence, Finding XXV in our case.[7] The court said in *Jedde-*

---

come to a stop." Col. 2 lines 27–30. [emphasis added]. And " * * * the columns are caused to approach each other to bring the picker-bars into alternate *overlapping* relationship * * * ". Col. 2 line 54 to col. 3 line 3 [emphasis added].

Thus the trial court was in error in finding that the prior art in hop-picking machines showed no overlapping of picking fingers. As we show in the text, this has no effect on our decision.

7. See note 4, *supra.*

*loh:* "Nor do these old components in the total combination of Parker, or in any of the groupings of old components which go to make up that total combination, co-act to produce a new result as compared to the total combinations, and grouping of components, in the prior art." [375 F.2d at 91] Hence, Finding XXV in our case.[8] In *Jeddeloh,* the court found the combination novel in one respect that "it was necessary to have a different range and positioning of old components," than shown in the prior art. [375 F.2d at 91] Hence, Finding XXVI in our case.[9] Finally the court in *Jeddeloh* conceded some elements of novelty, but held that "the means of achieving them, would have been obvious to a person of ordinary skill * * *". [375 F.2d at 91] Hence, Finding XXIV[10] and Conclusion of Law II[11] in our case.

Even assuming an improper reliance on a *legal* conclusion in *Jeddeloh,* the court's determination is amply supported by other authority, as discussed *infra.* Therefore, we conclude that the court's reliance was not improper.

■ Second, appellants assert that the court treated the phrase "new and unexpected" results as the *test* for non-obviousness of a combination patent. Appellants contend that this was error because whether a combination device produces "new and unexpected" results is only *evidence of* non-obviousness [citing Webster Loom Co. v. Higgins, 105 U.S. 580, 591, 26 L.Ed. 1177 (1881)] that should be considered along with commercial success, long felt but unsolved need, failure of others, etc.

The phrase coined by the district court undoubtedly had as its origin similar language in the Supreme Court's opinion in Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp., (1950) 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. In *A. & P. Tea,* the Court held that the combination device in issue there failed to produce "unusual or surprising conse-

quences" and, therefore, that it had failed to satisfy "this rather severe *test*" for patentability. [340 U.S. at 152, 71 S.Ct. 127, (emphasis added)]. The Court noted the existence of evidence that the device had filled a longfelt need and had enjoyed commercial success, but the Court concluded that "commercial success without invention will not make patentability." [340 U.S. at 153, 71 S. Ct. at 130]. Thus, it appears that the Court in *A. & P. Tea* announced "unusual or surprising" results as the *test* for invention (i.e. non-obviousness) for devices that combine elements present in the relevant prior art.

Appellants contend, however, that the enactment of 35 U.S.C. § 103 ousted "unusual or surprising" results as the test for patentability of combination devices, and substituted "obviousness" as the sole test [along with novelty and utility, if in issue]. The Supreme Court confronted this same assertion in Graham v. John Deere Co., (1965) 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545. In *Graham,* the Court stated:

"It is contended * * * that the first sentence of § 103 was intended to sweep away judicial precedents and to lower the level of patentability. * * *

"We believe that [the] legislative history * * * shows that the revision was not intended by Congress to change the general level of patentable invention. We conclude that *the section was intended merely as a codification of judicial precedents* embracing the Hotchkiss condition [Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683 (1851)], with congressional directions that inquiries into the obviousness of the subject matter sought to be patented are a prerequisite to patentability." [383 U.S. at 16, 17, 86 S.Ct. at 693 (emphasis added)].

The Court in *Graham* then carefully described the process that should be utilized in determining obviousness—

8. See note 4, *supra.*

9. See note 3, *supra.*

10. See note 2, *supra.*

11. See note 5, *supra.*

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."

[383 U.S. at 17, 18, 86 S.Ct. at 694]

In a case decided in the same term as *Graham,* the Supreme Court concluded that a combination patent for a battery was non-obvious because it produced "unexpected" results. United States v. Adams, (1966) 383 U.S. 39, 51, 86 S.Ct. 708, 15 L.Ed.2d 572. Furthermore, this circuit has held that the process of analysis described in *Graham* must incorporate a special standard when a combination patent is involved. Speaking for this court, Judge Duniway stated:

"In assessing the patentability of combination patents, we are to apply a 'severe test', whether 'the whole in some way exceeds the sum of its parts' to produce *'unusual or surprising consequences* from the unification of the elements * * *'", Great A. & P. Tea Co. v. Supermarket Equip. Co., 1950, 340 U.S. 147, at 152, 71 S.Ct. 127, at 130, 95 L.Ed. 162 [emphasis added]

Bentley v. Sunset House Dist. Corp. (9 Cir. 1966) 359 F.2d 140, 144. In Santa Anita Mfg. Corp. v. Lugash (9 Cir. 1966) 369 F.2d 964, 966, cert. denied 389 U.S. 827, 88 S.Ct. 83, 19 L.Ed.2d 83. Judge Barnes, speaking for the court, ruled that:

"Unquestionably these statutory requirements [35 U.S.C. §§ 101–103] are prerequisite to the issuance of any patent. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). But in the *special case of combination patents,* the *'severe test',* referred to in Bentley v. Sunset House Dist. Co., *supra, must be applied and satisfied* before a combination patent can be recognized." [emphasis added]

[369 F.2d at 967]. These decisions appear to indicate that "unusual or surprising" results, although not the only consideration, is certainly the central standard that must be satisfied in establishing non-obviousness for combination devices. This standard was also relied on in Continental Connector Corp. v. Houston Fearless Corp., (9 Cir. 1965) 350 F.2d 183, 191; Farr Company v. American Air Filter Company, (9 Cir. 1963) 318 F.2d 500, cert. denied, 375 U. S. 903, 84 S.Ct. 192, 11 L.Ed.2d 143; Griffith Rubber Mills v. Hoffar, (9 Cir. 1963) 313 F.2d 1, 4; Welsh Co. v. Strolee of Calif. Inc., (9 Cir. 1963) 313 F.2d 923.

Before concluding our discussion on this issue, we must observe that certain earlier decisions of this court have employed slightly modified versions of the "unusual or surprising" results terminology of *A. & P. Tea.* For example, in Kaakinen v. Peelers Co., (9 Cir. 1962) 301 F.2d 170, cert. denied, 371 U.S. 823, 83 S.Ct. 40, 9 L.Ed.2d 62, this court cites Webster Loom Co. v. Higgins (1881) 105 U.S. 580, 591, 26 L.Ed. 1177, for the proposition that a combination device must produce a "new and beneficial" result. In Pursche v. Atlas Scraper & Engin. Co., (9 Cir. 1962) 300 F.2d 467, 477, cert. denied, 371 U.S. 911, 83 S.Ct. 251, 9 L.Ed.2d 170, this court adopted the standard of Expanded Metal Co. v. Bradford (1909) 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034, that the result must be *"new* and *useful."*

*Kaakinen* did not cite *A & P Tea,* supra, which was then the most recent discussion by the Supreme Court of combination patents. *Pursche,* although adopting a "new and useful" standard, did cite *A & P Tea,* supra, which citation was preceded by the statement, "Nor is

the turning of the carrier * * * such an *unusual or surprising* consequence as to elevate the aggregation of old elements to the level of patentable invention." 300 F.2d at 480. [Emphasis added]. There was no *discussion* of a standard of "unusual and surprising" consequences and the holding was that the result must be "new and useful."

As we have previously noted, this court's most recent decisions involving combination patents have settled upon the "unusual or surprising" phraseology of *A & P Tea,* [e.g. *Bentley, Santa Anita* and *Continental,* supra]. Because of the absence in *Kaakinen* and *Pursche,* supra, of any meaningful discussion of the Supreme Court's illuminations in *A & P Tea* or of the test enunciated therein, we rely on the more recent decisions of this court that have applied the "unusual or surprising" terminology in arriving at their determinations of obviousness.

■ In fashioning a standard for measuring the obviousness of an idea to combine old elements, the courts have been sensitive to the fact that the issuance of a patent for a combination device will grant a monopoly for seventeen years on ideas (in combination) that were previously a part of the public domain. It is not surprising, therefore, that the courts have required a more severe test for patentability of devices that seek to withdraw ideas from the fund of public knowledge. The Supreme Court in *A. & P. Tea* determined that the standard for measuring the "obviousness" of an idea to combine elements known to the prior art is whether this combination produces "unusual or surprising" results. In the absence of authority to the contrary, we conclude that this remains the proper standard for determining the "obviousness" of a combination patent.

We return to our examination of Conclusion II. It is clear from inspecting the conclusion that the district court performed the requisite general analysis for determining the obviousness of a noncombination device, and it also applied the special standard of "new and unexpected" results for combination devices as provided in *A. & P. Tea, Bentley* and *Santa Anita.* Although there is no explicit use of the term "obviousness", the import of the conclusion is clear and satisfies the requirements of 35 U.S.C. § 103. Accordingly, we conclude that the court's conclusion of law is not erroneous.

Having thoroughly examined the record, we note that the district judge carefully and patiently examined the patent in suit and the patents in the relevant prior art. The care with which he insisted that each patent be fully explained and understood by him is commendable.

The judgment is affirmed in No. 23,-947. The appeals in No. 23,975 and No. 23,976 are dismissed.