467 F.2d 1170
 174 U.S.P.Q. 382
 ANSLEY WEST CORPORATION, Plaintiff-Appellee,
v.
ELCO CORPORATION, Defendant-Appellant.
ANSLEY WEST CORPORATION, Plaintiff-Appellee-Cross-Appellant,
v.
ELCO CORPORATION, Defendant-Appellant-Cross-Appellee.
 Nos. 25238, 25375 and 25394.
 United States Court of Appeals,
Ninth Circuit.
 July 3, 1972.
 
 Nathan Lavine (argued), of Adelman & Lavine, Philadelphia, Pa., Walton Eugene Tinsley, of Harris, Kiech, Russell & Kern, Los Angeles, Cal., David Roy Pressman, Philadelphia, Pa., for defendant-appellant.
 Thomas M. Marshall (argued), New York City, Frank E. Mauritz, of Lyon & Lyon, Miketta, Glenny, Poms & Smith, Los Angeles, Cal., for plaintiff-appellee.
 Before KOELSCH and HUFSTEDLER, Circuit Judges, and COPPLE,* District Judge.
 KOELSCH, Circuit Judge:
 
 
 1
 The district court held that Claims 1 through 7 of plaintiff's patent (Griswold, U.S. Patent No. 3,155,809, issued November 3, 1964) were valid and infringed. Defendants appeal.[1] We conclude that the claims lack invention on the now statutory ground that ". . . the differences between the subject matter . . . and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. . . ." 35 U.S.C. Sec. 103.
 
 
 2
 Claims 1 through 7 relate to a process and an apparatus for making, by "spot" welding (i. e., electrical resistance welding) electrical connections between electrical conductors, one or more of which is embedded in thermoplastic (heat sensitive) insulating material.
 
 
 3
 The process (claims 2, 3, 5 and 6) involves the following steps: First, the conductors that are to be welded together are juxtaposed and an electrode positioned at the outer side of each one. Second, the electrodes are then heated and are simultaneously pressed against the conductors. Finally, when the heat and pressure have softened and displaced the thermoplastic insulation and the conductors have made electrical (i. e., metal-to-metal) contact, a welding current is passed from the one electrode through the conductors to the other electrode, causing a welded electrical connection at the point of contact between the two conductors.
 
 
 4
 1. The record manifests that the process employed to effect such joinder is wholly within the ingenuity and skill of the ordinary mechanic in the art to which the subject matter pertains. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Several "prior art" patents are especially pertinent to this conclusion: U.S. Patent No. 1,613,959, issued in 1927 to Harry DeForrest Madden, relates to a method and machine to weld a coated (i. e., insulated) lead-in wire to the base of an incandescent lamp. "A preferable mode of practicing the present invention," says the patent description, "is to provide a heating element comprising a resistance body, such as a rod of carbon, tungsten or the like, and to pass a current therethrough to permit the resistant property of the element to generate the proper degree of heat therein. The heating element may be moved in contact with a wire positioned for welding in order to heat treat and render the coating non-resistant, after which suitable cooperating mechanism may be utilized to cause a welding operation by permitting a flow of electrical current through the bodies to be welded. The heating element may serve to impart heat to the body to be welded and as a terminal or electrode to carry a welding current."
 
 
 5
 U.S. Patent No. 2,977,672, issued in 1961 to T. A. Telfer, teaches a method to fabricate "bonded wire circuits" by electrically welding together electrical conductors separated by a "pressure deformable insulating member." The process specified "placing two or more electrical conductors in proximity, separating said conductors with a continuous pressure deformable insulating member, piercing said insulating member by applying pressure to said conductors and performing a welding operation at a conductor junction by forming a weld while said insulating material is pressure deformed to provide surface contact of said conductors."
 
 
 6
 British Patent No. 697,396, issued in 1953 to The General Electric Co., Ltd. and James Arthur Donelan, covering a process to weld together two metal members separated by insulating material in order to effect their electrical connection. Claim One is typical:
 
 
 7
 "1. A method of electric resistance welding together two metal members separated by an insulating material deformable by heat comprising applying heat to or generating heat in the region of the desired weld, displacing the heated insulating material from this region to permit the establishment of a conductive path between the two members and passing welding current between two electrodes to form a weld between the two members in the region where the insulation has been displaced."
 
 
 8
 Parenthetically we note that no reference was made in the patent in suit to the British patent[2] and that all claims in issue "read on" the disclosures of the latter (save perhaps in one immaterial particular).[3] As we read it, the above claim in the British patent teaches the same steps, carried out by essentially the same means and performed in the same sequence as those disclosed and claimed in Griswold.[4]
 
 
 9
 2. The apparatus described in Griswold claims 1, 4 and 7 consists of a pair of welding electrodes capable of applying pressure, means to heat and to position the electrodes and a means to produce a welding current.
 
 
 10
 These constituent elements are old; they are well known, and their combination is not a new one in this particular art. Both the Madden and the British patents, for example, brought them together. Thus, the apparatus fails to satisfy the severe test for combination patents declared in Graham v. John Deere, supra.
 
 
 11
 In sum, the judgments in Nos. 25,238 and 25,375 are reversed and the cause is remanded to the district court with directions to dismiss the action. The appeal in No. 25,394 is dismissed as moot.
 
 
 
 *
 Honorable William P. Copple, United States District Judge, Phoenix, Arizona, sitting by designation
 
 
 [1]
 The matter is here on defendant's appeals from the judgment of validity and infringement and from the supplemental judgment assessing damages and attorneys' fees and on plaintiff's cross-appeal from the latter judgment. The appeals were designated respectively Nos. 25,238, 25,375 and 25,394
 
 
 [2]
 Thus the statutory presumption of validity [35 U.S.C. Sec. 282] is "overcome," Westinghouse Elec. Corp. v. Titanium Metals Corp., 454 F.2d 515, 516 n. 2 (9th Cir. 1971)
 
 
 [3]
 The British patent refers to welding "members separated by a layer or sheet or coating of thermoplastic material." Griswold claims welding to a conductor "embedded in plastic material." Application of the process described in the British patent to conductors "embedded in plastic material" (Griswold) is not "unusual or surprising." Regimbal v. Scymansky, 444 F.2d 333, 339 (9th Cir. 1971)
 
 
 [4]
 The trial court, in assessing the level of skill and knowledge in the art, appears to have placed considerable reliance upon the testimony of a Mr. Lockie, one of plaintiff's expert witnesses. In its findings concerning the issue of obviousness, the court made the unequivocal assertion that "The testimony of Mr. Lockie clearly establishes that a man of ordinary skill in the art, i. e., an engineer involved in the design and engineering of electrical systems employing tape cable, would not have thought of, nor would it have been obvious to him, to employ heated electrodes in welding apparatus in order to achieve the interconnection of a conductor to a tape cable in 1961. This court believes and adopts Lockie's testimony that the use of heated welding electrodes was not obvious in 1961." (emphasis the lower court's)
 The force of this finding, however, is greatly dissipated, if not wholly destroyed, because there was no evidence that Mr. Lockie was familiar with the teachings of any of the prior art patents mentioned in this opinion and especially the British patent.
 This court, pointing out that "we must assume knowledge of [a prior patent] when considering obviousness," has characterized as "worthless" the opinion of an expert, whose testimony reveals his unfamiliarity with the prior art. Stevenson v. Diebold, Inc., 422 F.2d 1228, 1233 (9th Cir. 1970), cert. denied, 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970).